# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID ALAN DAILY,

      Defendant-Appellant.

UNPUBLISHED
March 24, 2016

No.  323054
Berrien Circuit Court
LC No.  2013-016562-FH

Before:  TALBOT, C.J., and WILDER and BECKERING, JJ.

PER CURIAM.

Following a jury trial, defendant, David Daily, was convicted of three counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a).  The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to 88 to 270 months' imprisonment for each conviction.  Defendant appeals as of right.  We affirm.

From 2006 to 2008, the victim's mother lived with defendant in Niles, Michigan.  The victim, SV, visited her mother every weekend.  The victim's mother worked weekends, and she left SV with defendant.  SV testified that, almost every weekend when her mother was at work, defendant touched her.  The sexual abuse was unknown until March 2013, when SV's brother found a letter, hidden in a notebook under SV's bed, that SV had written to her school counselor.  At trial, SV testified about three specific instances when defendant rubbed her vagina.  She also testified that defendant committed similar acts on over 100 occasions.

## I.  EXPERT TESTIMONY

Defendant argues that Brooke Rospierski, who was qualified as an expert in child sexual abuse, gave an opinion on the credibility of SV when she testified that SV made a disclosure and that the circumstances of SV's disclosure were consistent with disclosures of child sexual abuse victims.  We review this unpreserved claim of evidentiary error for plain error affecting defendant's substantial rights.  *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

Rospierski testified that children often delay disclosing sexual abuse for months or years.  She testified that disclosure is often a long process, and that children tell more of the story as time passes.  Rospierski testified that she interviewed SV, and that SV made a "disclosure" to

-1-

her. In Rospierski's opinion, the circumstances of the disclosure were consistent with disclosures of sexual abuse victims.

In *People v Peterson*, 450 Mich 349; 537 NW2d 857 (1995), our Supreme Court addressed the proper scope of expert testimony in child sexual abuse cases. An expert may not testify that the sexual abuse occurred, may not vouch for the veracity of the victim, and may not testify whether the defendant is guilty. *Id.* at 352, 369. An expert may testify regarding typical symptoms of child sexual abuse for the purpose of explaining the victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's credibility. *Id.* at 373. In addition, if a defendant raises the issue of the victim's postincident behavior or attacks the victim's credibility, an expert may testify that the victim's behavior is consistent with that of a sexual abuse victim. *Id.* at 373-374.

Rospierski's testimony that SV made a disclosure was not plainly erroneous. See *Benton*, 294 Mich App at 202. This testimony revealed a fact—that SV told Rospierski that defendant had sexually abused her—and does not indicate whether Rospierski believed SV and found her claim of sexual abuse credible. The testimony was not prohibited by *Peterson*.

Rospierski's testimony that the circumstances of SV's disclosure were consistent with disclosures of sexual abuse victims was also not plain error. Defendant attacked SV's credibility. He elicited testimony from SV that defendant touched her almost every weekend and yet she did not tell anyone. By eliciting this testimony, which highlighted the length of time between the sexual abuse and SV's disclosure, defendant suggested that SV was not credible because of her delayed disclosure. See *Peterson*, 450 Mich at 374 n 13. Because defendant attacked SV's credibility, Rospierski was allowed to testify that the circumstances of SV's disclosure were consistent with disclosures of sexual abuse victims. *Id.* at 373-374.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises numerous claims of ineffective assistance of counsel. These claims are preserved because defendant raised them before the trial court in a motion for an evidentiary hearing—which the trial court granted—and a new trial—which the trial court denied. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). The determination whether a defendant was denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008). A trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's right to effective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's findings of fact for clear error, but review de novo questions of constitutional law. *Id.* Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011).

Defendant claims that defense counsel failed to investigate and present the testimony of Jennifer Lohraff, Joanna Price, and Guy Price, which would have presented a defense theory that SV and her mother made up the CSC II allegations as a way for SV's mother to get back at defendant after their dating relationship ended. A defendant is entitled to have his counsel investigate and present all substantial defenses. *In re Ayres*, 239 Mich App 8, 22; 608 NW2d 132 (1999). A substantial defense is one that might have made a difference in the outcome of trial. *Id.* The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Lohraff overheard a statement by SL, SV's brother, that SV's mother had found a way to get back at defendant. This out-of-court statement by SL was hearsay, and it was inadmissible. See MRE 802. No hearsay exception covered the out-of-court statement. Because Lohraff's testimony about SL's statement was inadmissible, defense counsel's failure to interview Lohraff and call her as a witness at trial did not prejudice defendant. In other words, but for defense counsel's failure to interview Lohraff and call her as a witness, there is no reasonable probability that the outcome of defendant's trial would have been different. *Uphaus (On Remand)*, 278 Mich App at 185.

With regard to Joanna and Guy, both witnesses testified at the evidentiary hearing in a manner that could have been used to advance a theory that SV's mother wanted to get back at defendant for perceived transgressions that occurred during their dating relationship. The trial court found that the theory that SV and SV's mother conspired to fabricate the CSC II allegations against defendant strained credulity. The trial court's credibility finding was not clearly erroneous. *LeBlanc*, 465 Mich at 579. Defendant and SV's mother ended their relationship in early 2008. Five years passed before SV wrote her letter, which only contained a vague statement that defendant had touched her in places. Additionally, after SV wrote the letter, she hid it under her bed at her father's house, rather than giving it to her school counselor. As SV and SV's father testified, the letter became known to others only after SV's brother found it.[1] Under these circumstances, we are not left with a definite and firm conviction that the trial court made a mistake in finding that the theory of a conspiracy between SV and SV's mother was incredible. *Armstrong*, 490 Mich at 289. Because the theory was incredible, defense counsel's decision not to interview Joanna and Guy was sound trial strategy. See *People v Trakhtenberg*, 493 Mich 38, 52-53; 826 NW2d 136 (2012). Likewise, defense counsel's decision not to present evidence of an incredible defense theory was sound trial strategy. Supporting our conclusion is the fact that defense counsel presented defendant's two sons, who were at the house in Niles at least every other weekend, as witnesses. The testimony from the two sons that they never saw defendant inappropriately touch SV provided a more plausible basis for defense counsel to argue that SV made up the allegations. We affirm the trial court's decision that defense counsel was not ineffective for failing to investigate and call certain witnesses.

---

[1] The brother who found the note was not SL.

Defendant argues that defense counsel was ineffective for failing to object on hearsay grounds when SV's father testified that, after he asked SV if the letter her brother discovered was true, she said yes. Even if SV's statement was hearsay and counsel's failure to object could be viewed as objectively unreasonable, defendant cannot establish that, but for the failure to object, the result of the proceedings would have been different. SV testified that defendant abused her nearly every weekend she saw him for a period of two years, and she specifically recalled three instances of abuse. SV's letter was not admitted into evidence, and there was no testimony regarding the specifics of the letter. Because the contents of the letter were unknown, we fail to see how the out-of-court statement could have affected the jury's determination of SV's credibility. Defendant himself fails to offer an explanation regarding how SV's out-of-court statement affected the outcome at trial.

Defendant next argues that defense counsel was ineffective for failing to engage in a meaningful cross-examination of SV's father. Decisions regarding cross-examination involve matters of trial strategy. *In re Ayres*, 239 Mich App at 23. The only questions that defendant posits defense counsel should have asked SV's father concerned whether SV had any performance or behavioral problems in school. But, nothing on the record indicates that defense counsel had any reason to believe that such questions would have elicited testimony to support the defense theory that SV made up the allegations. Defendant has failed to overcome the strong presumption that defense counsel's cross-examination of SV's father was sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant also claims that defense counsel was ineffective for not engaging in any cross-examination of Rospierski. Defense counsel's testimony at the evidentiary hearing indicates that he made a strategic decision not to cross-examine Rospierski. He testified that, because the defense theory was that the charged acts did not occur, he did not want the jury to dwell on Rospierski's testimony. Additionally, defense counsel did not want to ask a question that would open a door for Rospierski to divulge information that could bolster SV's testimony. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Defendant has failed to overcome the strong presumption that defense counsel's performance was sound trial strategy. *Carbin*, 463 Mich at 600.

Defendant next argues that defense counsel was ineffective for failing to object to SV's testimony that she did not testify at the preliminary examination that her pants were always off when defendant touched her. The record indicates that defense counsel's failure to object was trial strategy, as he subsequently asked SV about the specific testimony that she gave at the preliminary examination. In doing so, defense counsel got SV to admit that she had testified that defendant would make her take her pants off and that there was never a time that her pants were "different"; this was inconsistent with her trial testimony. Defendant has failed to overcome the strong presumption that defense counsel's performance was sound trial strategy. *Id*.

Defendant also argues that defense counsel was ineffective for failing to file a motion, pursuant to *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994), to obtain SV's school records. Under *Stanaway*, when a defendant can establish a reasonable probability that privileged records are likely to contain material information to the defense, a trial court must conduct an in camera review of those records to determine whether the records contain evidence

that is reasonably necessary to the defense. *Stanaway*, 446 Mich at 649-650. If the trial court finds such evidence, the records should be provided to the defendant. *Id.* A trial court may not grant an in camera review of privileged records if the defendant is simply on a fishing expedition to see what information the records may contain. *Id.* at 680. The defendant must demonstrate a good-faith belief, grounded in some demonstrable fact, that the records are likely to contain information necessary to the defense. *Id.* at 677, 681. Counsel is not ineffective for failing to make a futile motion, *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), and defendant makes no argument that defense counsel could have demonstrated a reasonable probability that the school records were likely to contain material information to the defense. The ineffective assistance claim is without merit.

Defendant also claims that defense counsel was ineffective for failing to object to Rospierski's testimony that SV made a disclosure. Because the testimony was not improper, see discussion *supra*, any objection would have been futile. Counsel is not ineffective for failing to make a futile objection. *Id.*

Defendant additionally argues that defense counsel was ineffective for failing to adequately explain a plea offer to him. He contends that, had defense counsel told him that he would be sentenced to lifetime electronic monitoring if convicted of CSC II, see MCL 750.520c(2)(b), he would have accepted the prosecution's offer, which would have allowed him to plead guilty to fourth-degree criminal sexual conduct (CSC IV). The trial court found that defendant would not have accepted a plea offer unless the offer did not require him to register as a sex offender. This finding was not clearly erroneous. *LeBlanc*, 465 Mich at 579. Defense counsel testified that he explained to defendant that he would have to register as a sex offender if he pleaded guilty to CSC IV and that defendant was adamant that he would not accept any plea offer that required him to register as a sex offender. The prosecutor did not present any plea offer that did not require defendant to register as a sex offender. Under these circumstances, defendant cannot show that, but for the ineffective advice, he would have accepted the offer to plead guilty to CSC IV. See *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Accordingly, there was no prejudice.

## III. SENTENCING ISSUES

Next, defendant argues that the trial court erred when it used his October 16, 2006 conviction for larceny in a building to enhance his sentences. We review de novo the interpretation and application of a statute. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). A trial court's factual findings at sentencing are reviewed for clear error. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). See also MCR 2.613(C). Clear error exists when this Court is left with a definite and firm conviction that a mistake has been made. *Armstrong*, 490 Mich at 289.

MCL 769.10(1) provides that "[i]f a person has been convicted of a felony or an attempt to commit a felony . . . and that person *commits a subsequent felony* within this state, that person shall be punished upon conviction of the subsequent felony and sentencing under [MCL 769.13] as follows . . . ." The word "subsequent" in MCL 769.10 describes the sequential relationship between the prior conviction and the charged felony. *People v Gardner*, 482 Mich 41, 63; 753 NW2d 78 (2008). Specifically, the word "subsequent" is defined as "following in time, order, or

place." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, pursuant to the plain language of MCL 769.10, defendant's October 16, 2006 larceny conviction could only be used to enhance defendant's sentences for the CSC II offenses if the CSC II offenses occurred after the larceny conviction. See *People v Erwin*, 212 Mich App 55, 60; 536 NW2d 818 (1995).

At sentencing, the trial court determined, pursuant to the procedure set forth in MCL 769.13(5), that defendant's October 16, 2006 conviction could be used to enhance his sentences. MCL 769.13(5) provides that "[t]he existence of the defendant's prior conviction or convictions shall be determined by the court, without a jury, at sentencing, or at a separate hearing scheduled for that purpose before sentencing." A prior conviction "may be established by any evidence that is relevant for that purpose . . . ." MCL 769.13(5). If he or she wishes to challenge the validity of a prior conviction, "[t]he defendant shall bear the burden of establishing a prima facie showing that an alleged prior conviction is inaccurate or constitutionally invalid." MCL 769.13(6). Upon the defendant establishing a prima facie showing that "an alleged prior conviction is inaccurate, the prosecuting attorney shall bear the burden of proving, by a preponderance of the evidence, that the information or evidence is accurate." MCL 769.13(6).

We find no clear error in the trial court's decision to find that the offenses at issue were subsequent to the October 16, 2006 conviction, and therefore were subject to the second-habitual enhancement in MCL 769.10. SV testified that she lived with defendant on the weekends from 2006 to 2008. Although she did not give specific dates for when the abuse occurred, and the information filed by the prosecution lacked specific information about the three incidents, SV also testified that the abuse occurred "almost every weekend" during the time she lived with defendant. As recognized by the trial court, "almost every weekend" would surely encompass the timeframe occurring after October 16, 2006. On this record, we decline to find that the trial court clearly erred in determining that there was evidence to support that defendant committed the CSC II offenses after October 16, 2006. See *Armstrong*, 490 Mich at 289.

Finally, defendant argues that the sentence of lifetime electronic monitoring, required by MCL 750.520c(2), is unconstitutional because it constitutes cruel and/or unusual punishment and because it is an unreasonable search. In *People v Hallak*, ___ Mich App ___; ___ NW2d ___ (2015), this Court held that lifetime electronic monitoring for a defendant convicted of CSC II does not constitute cruel and/or unusual punishment under the United States Constitution, US Const, Am VIII, or the Michigan Constitution, 1963 Const, art 1, § 16. It also held that, although the placement of an electronic monitoring device on a defendant to monitor the defendant's movements constituted a search, lifetime electronic monitoring was not an unreasonable search under the Fourth Amendment, US Const, Am IV. *Hallak*, ___ Mich App at ___. Because we are bound to follow *Hallak*, MCR 7.215(J)(1), we reject defendant's constitutional arguments.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Jane M. Beckering

-6-