*In re* AYRES

Docket No. 216523. Submitted October 12, 1999, at Marquette. Decided
December 7, 1999, at 9:05 A.M.

Luke B. Ayres was found to be a juvenile delinquent by a jury in the
Marquette Circuit Court, Family Division, Michael J. Anderegg, J.,
for having engaged in conduct that would have been second-degree
criminal sexual conduct had he been an adult. One of the condi-
tions the court imposed on the respondent at the dispositional
hearing was that the respondent register as a sex offender pursuant
to the Sex Offenders Registration Act, MCL 28.271 *et seq.*; MSA
4.475(1) *et seq.* The respondent appealed.

The Court of Appeals *held*:

1. The Sex Offenders Registration Act, which requires a juvenile
who has been adjudicated responsible for certain criminal sexual
conduct offenses to register as a sex offender but restricts access
to information about the registered juvenile to law enforcement
agencies with jurisdiction over the juveniles' postal zip code area,
neither punishes the juvenile nor offends a basic premise of the
juvenile justice system—that a reformed adult should not have to
carry the burden of a continuing stigma for youthful offenses. The
confidential collection and maintenance of juvenile sex offender
registration data by law enforcement authorities serves the impor-
tant remedial function of aiding law enforcement investigation of
sex offenses, which have high recidivism rates, and is not so puni-
tive in form and effect as to render it cruel or unusual punishment
that is prohibited by Const 1963, art 1, § 16.

2. The respondent was not denied effective assistance of counsel
at trial. Allegations by the respondent that counsel failed to raise
any defense, failed to effectively cross-examine a crucial witness,
and delivered deficient closing argument all involve matters of trial
strategy, and the respondent failed to overcome the presumption
that the challenged actions constituted sound trial strategy.

3. The trial court did not err in denying the respondent's motion
for a new trial on the ground that the verdict was against the great
weight of the evidence. The evidence at trial did not preponderate
heavily against the verdict, and no miscarriage of justice will result
from allowing the verdict to stand. Inconsistencies in the testimony

of the victims, who ranged in age from four to six years, are not unusual or suspect given the victims' ages and the lapse of time between the offenses and the trial. Consistencies in the victims' testimony do not indicate that the victims rehearsed or were coached with regard to their testimony.

Affirmed.

1. RAPE — CRIMINAL SEXUAL CONDUCT — JUVENILES — SEX OFFENDERS REGISTRATION ACT — CONSTITUTIONAL LAW — CRUEL OR UNUSUAL PUNISHMENT.

Registration as a sex offender, as required of a juvenile adjudicated responsible for conduct that, if committed by an adult, would constitute one of certain enumerated criminal sexual conduct offenses, does not constitute punishment and therefore is not unconstitutional as cruel or unusual punishment (Const 1963, art 1, § 16; MCL 28.722[a][iii], [d][iv], 28.723[b]; MSA 4.475[2][a][iii], [d][iv], 4.475[3][b]).

2. CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL.

A defendant seeking reversal of an otherwise valid conviction on the basis of ineffective assistance of counsel must show that counsel's performance fell below an objective standard of reasonableness and so prejudiced the defendant as to deprive the defendant of a fair trial.

3. CRIMINAL LAW — NEW TRIAL — VERDICT AGAINST GREAT WEIGHT OF EVIDENCE.

A trial court may grant a new trial on the ground that the verdict was against the great weight of the evidence only if the evidence preponderates heavily against the verdict so that a miscarriage of justice would result if the verdict were allowed to stand.

*Gary L. Walker*, Prosecuting Attorney, and *Terrence E. Dean*, Civil Counsel, for the petitioner.

*Kendricks Bordeau, P.C.* (by *Suzanne L. Curry*), for the respondent.

Before: GRIFFIN, P.J., and SAWYER and SMOLENSKI, JJ.

GRIFFIN, P.J. Respondent appeals as of right an order of disposition entered following delinquency proceedings in the Marquette Circuit Court, Family Division. Respondent and two corespondents were alleged to have engaged in conduct tantamount to

second-degree criminal sexual conduct, MCL 750.520c(1)(a); MSA 28.788(3)(1)(a), with younger boys, ages four to six years old. Following a joint trial in January 1998,[1] the jury found that respondent, and both corespondents, had committed one count of second-degree criminal sexual conduct. At the dispositional hearing, among other conditions imposed, respondent was ordered to participate in sex offender training and register as a sex offender pursuant to MCL 712A.18(13); MSA 27.3178(598.18)(13). Respondent now appeals. We affirm.

I

Respondent raises a constitutional issue of first impression in Michigan: whether the requirement that he register as a sex offender under the Sex Offenders Registration Act, MCL 28.721 *et seq.*; MSA 4.475(1) *et seq.*, violates the prohibition against cruel or unusual punishment set forth in the Const 1963, art 1, § 16. We hold that it does not.

This Court reviews constitutional issues de novo. *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent. *Caterpillar, Inc v Dep't of Treasury*, 440 Mich 400, 413; 488 NW2d 182 (1992). *McKeighan v Grass Lake Twp Supervisor*, 234 Mich App 194, 201; 593 NW2d 605 (1999). The party challenging a statute has the burden of proving its invalidity. *People v Thomas*, 201 Mich App 111, 117; 505 NW2d 873 (1993).

---

[1] At the time of the trial, respondent was fourteen years old.

Respondent is required to register as a sex offender under the Sex Offenders Registration Act, MCL 28.721 *et seq.*; MSA 4.475(1) *et seq.*, effective October 1, 1995. Under the act, juveniles who have been adjudicated responsible for one of the offenses listed in MCL 28.722(d); MSA 4.475(2)(d) (which pertinent to this appeal includes second-degree criminal sexual conduct) are subject to the terms of the act.[2] MCL 28.722(a)(iii) and (d)(iv); MSA 4.475(2)(a)(iii) and (d)(iv), MCL 28.723(b); MSA 4.475(3)(b). A juvenile is required to register as a sex offender before entry of the order of disposition for a designated sexual offense.[3] For those juveniles convicted of only a single offense, compliance with this requirement continues for twenty-five years after the date of the initial registration. MCL 28.725(3); MSA 4.475(5)(3).

The Department of State Police is vested with the duty of maintaining the registration of sex offenders by means of a computerized data base. MCL

---

[2] MCL 712A.18(13); MSA 27.3178(598.18)(13) provides as follows:

> If the court has entered an order of disposition or a judgment of conviction for a listed offense as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722 [MSA 4.475(2)], the court, the family independence agency, or the county juvenile agency shall register the juvenile or accept the juvenile's registration as provided in the sex offenders registration act, 1994 PA 295, MCL 28.721 to 28.732 [MSA 4.475(1) to 4.475(12)].

[3] The registration of the sex offender is required to contain all the following information: (1) name, (2) social security number, (3) date of birth, (4) address, (5) a brief summary of the individual's convictions for listed offenses, including where the offense occurred and the original charge, and (6) a complete physical description. MCL 28.727(1); MSA 4.475(7)(1). In addition, a registration may contain the following additional information for a registrant: (1) blood type, (2) whether a DNA identification profile is available for the individual, and (3) a recent photograph. MCL 28.727(2); MSA 4.475(7)(2).

28.722(b); MSA 4.475(2)(b), MCL 28.728(1); MSA 4.475(8)(1). Although registration of sex offenders is generally confidential and intended for law enforcement purposes only, MCL 28.730(1); MSA 4.475(10)(1), law enforcement authorities are required to make information about sex offenders registered within their jurisdictions available for inspection by the public during regular business hours. MCL 28.730(2); MSA 4.475(10)(2). However, MCL 28.728(2); MSA 4.475(8)(2) exempts juvenile offenders who are not tried as adults from the computerized data base,[4] and the duty to make the information contained therein available to the public likewise does not pertain to registered juvenile offenders. MCL 28.730(2), (3); MSA 4.475(10)(2), (3). Civil and criminal penalties are provided in the act for those who divulge or use information about a registration in violation of the act. MCL 28.730(4), (5); MSA 4.475(10)(4), (5).

Respondent contends that requiring him to register as a sex offender constitutes cruel or unusual punishment under Michigan's constitution, Const 1963, art 1,

---

[4] MCL 28.728(2); MSA 4.475(8)(2) provides in part:

The department [the State Police] shall maintain a computerized data base separate from that described in subsection (1) to implement section 10(2) and (3) [MCL 28.730(2), (3); MSA 4.475(10)(2), (3)]. The data base shall consist of a compilation of individuals registered under this act, but shall not include any individual registered solely because he or she had 1 or more dispositions for a listed offense entered under section 18 of chapter XIIA of Act No. 288 of the Public Acts of 1939, being section 712A.18 of the Michigan Compiled Laws, in a case that was not designated as a case in which the individual was to be tried in the same manner as an adult under section 2d of chapter XIIA of Act No. 288 of the Public Acts of 1939, being section 712A.2d of the Michigan Compiled Laws.

§ 16.[5] Respondent notes, in particular, that the statutory twenty-five-year period during which he must remain registered as a sex offender far exceeds the period in which the family division of the circuit court can exercise jurisdiction over him. The court has jurisdiction over respondent only until the age of twenty-one, MCL 712A.18d; MSA 27.3178(598.18d); when respondent reaches the age of thirty, his juvenile records must be expunged. MCR 5.925(E)(3)(b). The twenty-five-year registration period also exceeds the time when an application to set aside a juvenile adjudication can be made and granted. MCL 712A.18e; MSA 27.3178(598.18e). Respondent argues that the registration requirement undermines a purpose of the Juvenile Code, i.e., to shield youthful errors from the glare of the public by preventing juvenile court convictions from subsequently discrediting the individual because of childhood actions. Cf. *People v Poindexter*, 138 Mich App 322, 326; 361 NW2d 346 (1984).

In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state as well as the penalty imposed for the same crime in other states. In addition, we consider the goal of rehabilitation. *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996); *People v Launsburry*, 217 Mich App 358, 363; 551 NW2d 460 (1996).

---

[5] Const 1963, art 1, § 16 provides:

Excessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained.

In the present case, a threshold question that precedes consideration of these factors is whether the registration requirement in fact constitutes "punishment" within the meaning of Const 1963, art 1, § 16. This precise issue has never been addressed by the courts of this state. However, we find instructive two recent federal court decisions that have held that the registration and notification requirements of Michigan's Sex Offenders Registration Act, as applied to adult offenders, do not impose "punishment" under the Eighth Amendment of the United States Constitution.[6]

In *Doe v Kelley*, 961 F Supp 1105 (WD Mich, 1997), the federal district court considered the plaintiffs'[7] constitutional challenge, based in part on an alleged violation of the Eighth Amendment prohibition against cruel and unusual punishment, to the act's 1997 amendment allowing public access to information about persons convicted of certain sex offenses. MCL 28.730(2); MSA 4.475(10)(2). In the context of deciding a motion for a preliminary injunction, the court focused on whether the statutory notification requirements constituted "punishment" under the Eighth Amendment and other constitutional theories presented by the plaintiffs:

> In the criminal justice context, punishment, generally, is the deliberate imposition, by some agency of the state, of some measure intended to chastise, deter or discipline an offender. . . . [D]etermining whether government action is

---

[6] US Const, Am VIII provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

[7] The plaintiffs in *Kelley* were adult convicted sex offenders.

punishment requires consideration of the totality of circum-
stances, and particularly (1) legislative intent, (2) design of
the legislation, (3) historical treatment of analogous mea-
sures, and (4) effects of the legislation. [*Kelley, supra* at
1108.]

Applying these factors, the *Kelley* court found that
absent a discernible expression of legislative intent,
the intent of the act could only be gleaned from the
design of the amendment itself:

> On its face, the notification scheme is purely regulatory
> or remedial. It imposes no requirement on the registered
> offender, inflicts no suffering, disability or restraint. It does
> nothing more than create a mechanism for easier public
> access to compiled information that is otherwise available
> to the public only through arduous research in criminal
> court files. If the expressed legislative purpose precipitating
> enactment of similar laws in other states is any guide, the
> Michigan Legislature, too, sought to make information avail-
> able to the citizenry concerning persons residing in their
> communities who have engaged in sexually predatory con-
> duct and who, by virtue of relatively high recidivism rates
> among such offenders, are recognized to be resistant to ref-
> ormation and deemed to pose potential danger of repeat
> misconduct. . . . The information is made available to mem-
> bers of the public so that they might modify their behavior
> in appropriate and lawful ways to protect themselves and
> prevent crime. [*Id* at 1109.]

Analyzing the history of analogous measures, Judge
McKeague rejected the plaintiffs' contention that the
notification provisions are the modern-day equiv-
alents of branding, shaming, or banishment:

> [T]he instant amendment does nothing more than provide
> for compilation of and public accessibility to information
> that is already a matter of public record. Unlike historical
> uses of branding, shaming and banishment, the notification

provisions do not affirmatively impose any suffering, restraint or obligation upon the offender. The notification provisions themselves do not touch the offender at all. While branding, shaming and banishment certainly impose punishment, providing public access to public information does not. . . . And while public notification may ultimately result in opprobrium and ostracism similar to those caused by these historical sanctions, such effects are clearly not so inevitable as to be deemed to have been imposed by the law itself. [*Id* at 1110.]

Finally, the *Kelley* court considered the effects of the act:

[T]he effects upon which plaintiffs rely—anecdotal evidence of others' experiences of harassment, assault, job loss, eviction and dislocation—are effects that proceed only indirectly from public access to information. . . .

This Court is unwilling to assign blame for such indirect consequences to the mere compilation and provision of public information under the notification amendment. There is a connection, to be sure. However, . . . punishment in the criminal justice context must be reviewed as the *deliberate imposition by the state* of some measure *intended* to chastise, deter or discipline. Actions taken by members of the public, lawful or not, can hardly be deemed dispositive of whether legislation's purpose is punishment. . . .

\*     \*     \*

. . . [E]ven if anecdotal evidence of potential actions by members of the public were considered effects likely to be visited on plaintiffs as a direct result of the notification provisions, such evidence would be insufficient, in light of the other discussed considerations, to persuade that any punitive effect overwhelms the primary and legitimate remedial purpose of the law. [*Id* at 1111-1112 (emphasis in original).]

Having weighed the relevant factors, Judge McKeague was not persuaded that the notification provi-

sions of the act imposed "punishment" under the Eighth Amendment.

In *Lanni v Engler*, 994 F Supp 849, 852 (ED Mich, 1998), another federal district court likewise concluded that the notification *and* registration provisions of the act, as applied to an adult offender, were not punitive in nature and therefore did not violate the Eighth Amendment prohibition against cruel and unusual punishment:

> Although the Act does not contain an express statement of legislative intent, the implied purpose is plainly regulatory. . . . Neither notification or [sic] registration inflicts suffering, disability, or restraint on the registered sex offender. It does nothing more than create a method for easier public access to compiled information that is otherwise available to the public through tedious research in criminal court files. Like similar laws in other states, the Michigan Act also seeks to provide the local citizenry with information concerning persons residing near them who have been convicted of sexually predatory conduct and who, by virtue of relatively high recidivism rates among such offenders and the devastating impact that sex crimes have on society, pose a serious threat to society. . . .
>
> The language of section 730 makes clear that the legislature intended the notification provision to prevent future attacks by recidivist sex offenders. The text and structure reveal no intent to punish, but rather only a regulatory purpose. Notification is limited both by the amount of information available and the area in which the information is disseminated. First, the data available for public dissemination is limited to information already available from law enforcement, court, and Department of Corrections records. Mich Comp Laws Ann 15.231 *et seq.* Second, access to the sex offender registry is limited by zip code so that only those living in the same zip code as the sex offender can obtain the information. A law designed to punish a sex offender would not contain these strict limitations on public dissemination.

\*     \*     \*

. . . Dissemination of information about a person's criminal involvement has always held the potential for negative repercussions for those involved. However, public notification in and of itself, has never been regarded as punishment when done in furtherance of a legitimate government interest. . . . The registration and notification requirements can be more closely analogized to quarantine notices when public health is endangered by individuals with infectious diseases. . . . Whenever notification is directed to a risk posed by individuals in the community, those individuals can expect to experience some embarrassment and isolation. Nonetheless, it is generally recognized that the state is well within its rights to issue such warnings and the negative effects are not regarded as punishment. . . .

\*     \*     \*

. . . [T]his Court recognizes that imposition of the registration and notification requirements may deter others from future criminal activity, a traditionally recognized punitive purpose. However, a secondary criminal purpose may not undermine the Act's primary remedial purpose, as deterrence "may serve civil as well as criminal goals." [*Lanni, supra* at 853-854 (citations omitted).]

See also *State statutes or ordinances requiring persons previously convicted of crimes to register with authorities,* 36 ALR5th 161, § 5.

We agree with both *Kelley, supra,* and *Lanni, supra,* and adopt their analyses as our own. Moreover, the portion of the act that was the primary focus of constitutional scrutiny in *Kelley* and *Lanni*—the public notification provision—is obviously not at issue in the present case because respondent, a juvenile offender, is expressly exempted from this section of the act. As previously noted, registration information pertaining to juveniles not charged as adults is

confidential and is to be used only by law enforcement personnel. MCL 28.728(2); MSA 4.475(8)(2), MCL 28.730(2), (3); MSA 4.475(10)(2), (3). Consequently, respondent cannot complain that the "sting of notification," *Lanni, supra* at 854, subjects him to undue public ostracism that confounds the purpose of the Juvenile Code. *Poindexter, supra.*

Indeed, in our view, the fact that public access to registration data regarding juveniles is foreclosed only serves to underscore the federal courts' ultimate conclusion that the registration requirement of the act is not, in the constitutional sense, a form of "punishment." Reiterating the *Lanni* court's observation, *supra* at 853, "A law designed to punish a sex offender would not contain these strict limitations on public dissemination." The Legislature's restrictive approach in applying the act to juvenile offenders, carefully circumscribing access to such registration data and exempting juvenile offenders from the public notification requirements of the act, evinces a broad remedial, not punitive, purpose. Criminal sexual conduct, whether committed by juvenile or adult offenders, is a serious offense with a high rate of recidivism. The original proponents of this legislation advanced the registration requirement as a regulatory measure:

> Requiring convicted sex offenders to be registered with law enforcement officials would assist investigations of these types of crimes because law enforcement agencies would have a resource for determining the identity and residence of known sex offenders in the general area. Once created, the registry would become a tool that law enforcement agencies could use to solve, or even prevent, crimes. If a sex offense were committed, the registry could be used

to identify potential suspects who lived in the area or who had a pattern of similar crimes.

It is widely believed that sex offenders are not responsive to therapy programs and may have a particular deviant orientation that cannot be easily changed or suppressed. Indeed, according to a review of sex offender registration laws conducted in 1992 by the Washington State Institute for Public Policy (WSIPP), in California, which was the first state to require registration of sex offenders, a 15-year follow-up study of sex offenders first arrested in 1973 revealed that nearly half of the group was rearrested for some type of offense and 20% was rearrested for a subsequent sex-related offense, and that those whose first offense was rape by force or threat had the highest recidivism rate. The California study also reportedly found that a large proportion of criminal justice investigators believe that the registration system was effective in locating sex offenders and apprehending suspects.

*     *     *

Requiring the registration of all juvenile sex offenders is a reasonable measure. A Michigan State Police detective sergeant testified before the Senate Judiciary Committee that reports indicate increasingly more and younger juvenile sex offenders. [Senate Legislative Analysis, SB 193, 194, 397, and 400, August 8, 1944, pp 4-6.[8]]

As ultimately enacted, the language and format of the legislation did not contradict these regulatory goals. *Kelley, supra; Lanni, supra.* Moreover, the fact that the registration requirement might have a deterrent effect on criminal behavior, a punitive purpose, does not detract from or overwhelm the primary regulatory purpose of the act. *Id.*

---

[8] Legislative bill analyses are not official statements of legislative intent but nonetheless may be of probative value. *Seaton v Wayne Co Prosecutor (On Second Remand),* 233 Mich App 313, 321, n 3; 590 NW2d 598 (1998), and cases cited therein.

In light of the existence of strict statutory safe-guards that protect the confidentiality of registration data concerning juvenile sex offenders, we conclude that the registration requirement imposed by the act, as it pertains to juveniles, neither "punishes" respondent nor offends a basic premise of the juvenile justice system—that a reformed adult should not have to carry the burden of a continuing stigma for youthful offenses. The confidential collection and maintenance of juvenile offender registration data by law enforcement authorities serves an important remedial function and is not so punitive in form and effect as to render it unconstitutional "punishment" under Const 1963, art 1, § 16.

II

Respondent Ayres next argues that he was aggrieved by the ineffective performance of his trial counsel as a result of counsel's failure to raise any defense on respondent's behalf, failure to effectively cross-examine a crucial witness, and deficient closing argument.

In order to justify reversal of an otherwise valid conviction on the basis of ineffective assistance of counsel, "a defendant must show that a counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). See also *People v Ho*, 231 Mich App 178, 191; 585 NW2d 357 (1998). The defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

Respondent Ayres primarily argues that his counsel did not prepare a defense for him because no witnesses were called. A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses. Where there is a claim that counsel was ineffective for failing to raise a defense, the defendant must show that he made a good-faith effort to avail himself of the right to present a particular defense and that the defense of which he was deprived was substantial. A substantial defense is defined as one that might have made a difference in the outcome of the trial. *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). This Court is reluctant to substitute its judgment for that of trial counsel in matters of trial strategy, and ineffective assistance of counsel will not be found merely because a strategy backfires. *People v Duff*, 165 Mich App 530, 545-546; 419 NW2d 600 (1987).

In this case, the attorneys for respondent and the corespondents worked together to prepare a joint defense that focused on the inconsistencies of the victims' testimony. While respondent Ayres contends that this was not a defense because it did not involve the presentation of evidence or witnesses, it was a defense strategy nonetheless. Therefore, respondent Ayres incorrectly argues that no defense was prepared on his behalf.

Moreover, a review of the lower court file indicates that a notice of alibi defense was filed on behalf of respondent. Two witnesses were listed on that notice. It appears that before trial, respondent's counsel intended to present an alibi defense, but that defense was subsequently abandoned because the prosecutor was allowed to amend the petition to expand the

dates when the charged offense occurred, making it much more difficult to account for respondent's whereabouts on more than one occasion. Abandonment of the alibi defense was thus clearly a strategical decision on the part of trial counsel, and defendant has not overcome the presumption that such action might be considered sound trial strategy. *Tommolino, supra.*

With regard to respondent's other arguments on this issue, he has likewise not overcome the presumption that his counsel's decisions involved sound trial strategy. What arguments to make in closing, how to cross-examine witnesses, and what evidence to present all involve matters of trial strategy. Respondent's failure to request an evidentiary hearing regarding his claim of ineffective assistance of counsel limits our review to errors apparent on the record. *People v Wilson,* 196 Mich App 604, 612; 493 NW2d 471 (1992). Without the testimony of respondent's trial counsel, this Court is unable to conclude that counsel's decisions were not appropriate.

III

Next, respondent Ayres argues that the trial court erred in denying his motion for a new trial on the ground that the verdict was against the great weight of the evidence. We disagree.

A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates heavily against the verdict so that a miscarriage of justice would result from allowing the verdict to stand. *People v Lemmon,* 456 Mich 625, 642; 576 NW2d 129 (1998). The trial judge is not allowed to sit as the "thirteenth" juror and grant a

new trial on the basis of a disagreement with the jurors' assessment of credibility. *Id.* at 647.

The crime of second-degree criminal sexual conduct requires the prosecution to show that respondent engaged in sexual contact with a person under the age of thirteen years. "Sexual contact" is described as "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification." MCL 750.520c(1)(a); MSA 28.788(3)(1)(a), MCL 750.520a(k); MSA 28.788(1)(k); *People v Piper*, 223 Mich App 642, 645; 567 NW2d 483 (1997).

In this case, there were many inconsistencies among the five complainants' accounts of how the sexual game giving rise to the charges was played and who was involved. However, these children ranged in age from four years to six years; given their age and the stress of having to testify, the inconsistencies are not unusual or suspect when the incidents happened at least two times and about six months before they testified.

What is striking in this case is that there were also general consistencies between the younger boys' accounts. All five boys described sexual activity beyond their years. The boys all described inappropriate sexual contact with respondents, although some of the children were not always certain if each respondent was present. The five boys named respondent and the two corespondents as the instigators of the game. Although respondent suggests that the boys' testimony was rehearsed, the children's consis-

tency with respect to the game's name supports the fact that they learned the name from the perpetrators while they were "taught" how to play it. In addition, the children did not always refer to respondents in the same order. Thus, the evidence did not suggest that these children were either coached or told what to say.

As for other alleged inconsistencies in identification and testimony, these allegations do not support a conclusion that the evidence preponderates heavily against the verdict of second-degree criminal sexual conduct to the extent that a miscarriage of justice occurred, requiring reversal of the jury verdict. *Lemmon, supra.* Respondent's argument in this regard is therefore without merit.

Affirmed.