# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. A. GORDON, Minor.

UNPUBLISHED
May 26, 2016

No. 328343
Wayne Circuit Court
Family Division
LC No. 14-517928-NA

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right an order terminating her parental rights to her minor son, JG. For the reasons below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose following the death of respondent's three-year-old daughter, JS, in September 2014. In October 2014, the Department of Health and Human Services (DHHS) filed a petition asking the court to take protective custody of JG and to terminate respondent's parental rights to the child. The petition alleged that in September 2014, respondent and her boyfriend, CT, brought JS to Henry Ford Hospital. Hospital records revealed that JS was cold to the touch at the time of arrival and had contusions to her chest, abdomen, and legs. The petition explained that respondent said JS had been vomiting and unable to eat for 10 days before her death, but she did not seek medical care for the child. The petition further alleged that CT was responsible for JS's supervision at the time of the incident. The petition asserted that termination was appropriate because respondent was being investigated for JS's death, she and CT had been arrested for homicide, and respondent admitted that she was homeless and smoked marijuana.

At a pretrial hearing, respondent entered a no-contest plea, allowing the court to take jurisdiction over JG and agreeing that clear and convincing evidence established at least one of the statutory grounds for termination under MCL 712A.19b(3). The court accepted the plea, leaving only the issue of best interests for trial. At trial, the medical examiner who conducted JS's autopsy testified that the child was underweight and had abrasions or contusions in various stages of healing to her right arm, forehead, face, upper and lower back, buttocks, right elbow, thighs, right shoulder, chest, abdomen, and forearms. He also discovered hemorrhage in the child's abdomen, dusky color in the colon, which is a sign of sepsis, and a laceration in the pancreas, which he opined likely occurred one week before JS's death and would have required significant force to inflict. The medical examiner also observed new bleeding in the pancreatic

-1-

injury, which evidenced additional trauma, and hemorrhaging between the scalp and skull bone, which he believed was caused by repeated blows to the head.

The medical examiner testified that the injuries could not have occurred through normal child play, and there was no evidence of other diseases that could have caused the injuries. He said JS would have shown obvious signs of distress the week before she died, such as vomiting, nausea, urinary and bowel issues, and fever. He classified the manner of death as homicide.

Detroit Police Sergeant Brian Bowser testified that during an interview after JS's death, respondent admitted that she knew JS was injured, was being abused, and needed medical care, but she did not seek medical treatment because of prior Child Protective Services (CPS) involvement. The court adjourned the trial to allow the parties to review DVDs of respondent's police interviews before proceeding with Bowser's testimony. At the continued trial, respondent's attorney objected to Bowser's testimony, arguing that it did not go to JG's best interests. He explained that he had technical difficulties and was unable to review the DVDs. The trial court allowed Bowser to continue testifying, but stated that respondent's counsel could recall Bowser if he later reviewed the DVDs and believed they contained impeachment evidence.

Caseworker Warren Stanfield testified that he became aware of respondent in August 2014, when he received reports of an unexplained bruise on JS's leg. The CPS investigation was still open when JS died in September 2014. According to Warren, respondent admitted to him that JS had not been well for 10 days before her death, but she did not seek medical care for the child. Respondent told Stanfield that she was working at Family Dollar at the time of JS's death, and CT watched JS and JG while she was at work. Stanfield also testified that a nurse at Henry Ford Hospital stated that respondent told her she did not seek medical care for JS because of the ongoing CPS investigation.

A Clinic for Child Study report stated that respondent told a psychologist that she "was aware of [JS]'s abrasions and bruises at the time of her death. She added, 'It was like someone beat her. [CT] had to have done it.' " After considering the severity of JS's injuries, her death, and evidence that respondent was aware of the injuries and abuse yet refused to seek medical care, the court concluded that terminating respondent's parental rights was in JG's best interests.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent first argues that her trial counsel provided ineffective assistance in multiple instances during the termination proceedings. Because respondent did not raise this issue below, our review of her unpreserved ineffective assistance claim is limited to errors apparent on the record. *In re AMB (On Remand)*, 248 Mich App 144, 231-232; 640 NW2d 262 (2001); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

"[T]he principles of effective assistance of counsel developed in the context of criminal law apply by analogy in child protective proceedings." *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2001) (citation and quotation marks omitted), overruled on other grounds by *In re Sanders*, 495 Mich 394; 852 NW2d 524 (2014). See also *In re Simon*, 171 Mich App 443, 447; 431 NW2d 71 (1988). To establish a claim of ineffective assistance, a respondent must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2)

there is a reasonable probability that the outcome of the proceedings would have been different absent counsel's deficient performance. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Effective assistance of counsel is presumed, and a respondent bears a heavy burden of proving otherwise. *Id.* In assessing counsel's performance, this Court will not substitute its judgment for that of counsel on matters of trial strategy, and will not use the benefit of hindsight. *Id.* at 242-243.

## A. ADMISSIONS & NO-CONTEST PLEA

Respondent first argues that her counsel provided ineffective assistance by advising her to enter a plea allowing the court to take jurisdiction over JG and admitting that clear and convincing evidence supported terminating her parental rights under MCL 712A.19b(3). When reviewing a claim of ineffective assistance arising out of a plea, the question is whether the plea was voluntarily and understandingly made. See *People v Thew*, 201 Mich App 78, 89; 506 NW2d 547 (1993). Ineffective assistance of counsel only results in the plea context if counsel failed to explain the nature and consequences of the plea and the range of available courses of action so as to allow the respondent to make an intelligent and informed choice. See *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). In this case, there is no evidence that respondent did not fully understand the nature and consequences of her plea, and nothing in the record suggests that respondent's counsel pressured her into entering the plea. To the contrary, respondent told the court at the time she entered the plea that it was her own choice and that she was not threatened, promised anything, or forced to make the admissions.

Further, respondent cannot show with a reasonable probability that the outcome of the proceedings would have been different if she refused to stipulate to jurisdiction and the statutory grounds. See MCL 712A.2(b); MCL 712A.19b(3). Evidence introduced at trial revealed that JS died as the result of physical abuse that occurred over several weeks, and multiple sources indicated that respondent was aware of the injuries and abuse, yet refused to seek medical care for JS. Considering this evidence, respondent cannot persuasively show that any challenge to jurisdiction and the statutory grounds would have been successful.

## B. THE DVDS & SERGEANT BOWSER'S TESTIMONY

Respondent next argues that her trial counsel was ineffective because he was not prepared to cross-examine Bowser, he failed to impeach Bowser with the DVDs of respondent's police interviews, he failed to introduce the DVDs at trial, and he failed to move to suppress respondent's statements to Bowser as being involuntary. Decisions regarding what arguments to make, how to cross-examine witnesses, and what evidence to present all involve matters of trial strategy. *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999). Respondent argues that the DVDs show that she did not admit to knowing about JS's abuse, so her counsel should have introduced the DVDs to impeach Bowser. However, the DVDs are not part of the lower court record, and this Court's review of respondent's unpreserved ineffective assistance claim is limited to errors that plainly exist on the record. See *Sabin*, 242 Mich App at 658-659.

Respondent argues that her counsel should have objected to Bowser's testimony about her statements during the police interviews because the statements were involuntary. However, respondent has not shown that any such objection would have been successful, particularly when

she signed a *Miranda*[1] waiver before making the statements. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) (explaining that counsel cannot be deemed ineffective for failing to raise a meritless objection).

Moreover, respondent cannot demonstrate prejudice arising from the absence of an objection. Bowser testified that respondent told him she knew JS was injured and was being abused, but she refused to seek medical care for the child because of prior CPS involvement. This was not the only evidence introduced at trial showing that respondent knew about the injuries and abuse, but failed to seek appropriate medical care. Stanfield testified that a nurse at Henry Ford Hospital stated that respondent said she did not seek earlier medical care for JS because of an ongoing CPS investigation. A Clinic for Child Study report also revealed that respondent told a psychologist that she "was aware of [JS]'s abrasions and bruises at the time of her death. She added, 'It was like someone beat her. [CT] had to have done it.' " Considering this evidence, respondent cannot show that the outcome of the case would have been different even if counsel had successfully objected to Bowser's testimony on voluntariness grounds.

## C. RESPONDENT'S TESTIMONY

Respondent next argues that her trial counsel provided ineffective assistance by advising her not to testify at trial. However, nothing in the lower court record suggests that respondent's counsel advised her not to testify at trial. Again, because respondent's ineffective assistance of counsel claim is unpreserved, this Court will not grant relief unless error is plainly apparent on the record. See *Sabin*, 242 Mich App at 658-659.

## D. MEDICAL EXAMINER'S AUTOPSY REPORT

Finally, respondent argues that her trial counsel provided ineffective assistance by accepting the medical examiner's autopsy report without consulting another medical expert or introducing contradictory evidence. Specifically, respondent points to a letter from another medical examiner, suggesting that it could not be substantiated that JS's death was a homicide. An attorney's decision whether to retain witnesses, including expert witnesses, is presumed to be a matter of trial strategy. *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). In this case, even if counsel introduced expert medical testimony suggesting that JS's manner of death was not homicide, respondent cannot show that such testimony would have altered the outcome of the proceedings. Assuming JS's injuries were self-inflicted or accidental, the evidence still established that respondent was aware of the injuries 10 days before the child's death, but failed or refused to seek appropriate medical care. Therefore, respondent has not established her claim of ineffective assistance of counsel.

## III. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in JG's best interests. We review a trial court's best-interest determination

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). " 'A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses.' " *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013), quoting *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

Before terminating parental rights, a trial court must find that termination is in a child's best interests by a preponderance of the evidence. *Moss*, 301 Mich App at 90; MCL 712A.19b(5). In making a best-interest determination, courts may consider a variety of factors including, among others, a child's bond with a parent, a parent's parenting ability, and the child's need for permanency, stability, and finality. *Olive/Metts*, 297 Mich App at 41-42.

Although the record supports that respondent shared a bond with JG, it also shows that JG's half-sister sustained multiple serious, intentional injuries over a several-week period of time while in the care of respondent and CT. These injuries ultimately resulted in the child's death. Respondent admitted to multiple people, including a police officer, a caseworker, a nurse, and a psychologist, that she was aware of the injuries or abuse, but failed to seek medical care for the child. Considering this evidence, the trial court properly concluded that JG's need for safety and protection outweighed any bond he shared with respondent. The trial court also noted that respondent was facing criminal charges regarding the role she may have played in JS's death, and JG needed to have confidence that he would be in a stable and permanent home in the future. Under these circumstances, the trial court did not clearly err by finding that termination of respondent's parental rights was in JG's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro