# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RODNEY DUANE PERSON,

        Defendant-Appellant.

UNPUBLISHED
June 12, 2018

No. 335534
Wayne Circuit Court
LC No. 16-005197-01-FH

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of first-degree home invasion, MCL 750.110a(2), and larceny in a building, MCL 750.360. The trial court sentenced defendant to concurrent prison terms of 132 to 480 months for the home invasion conviction, and 64 to 96 months for the larceny conviction. We affirm.

Defendant's convictions arise from the break-in and theft of property at a home in Detroit on June 5, 2016. The complainant arrived home and saw that her kitchen windows were broken. She heard a noise coming from the upper floor of the house, so she called 911. Officers Wilbur Medley and Karen Boudreaux were the first officers to arrive. Medley saw defendant emerge from a window on the rear side of the house. A second police unit, Officers Roger Salcedo and Marcus McClung, arrived as defendant ran from the house. The officers gave chase and apprehended defendant a short distance from the house. Medley searched defendant and found plastic bags containing coins, jewelry, and a book of trading stamps, which the complainant identified as items taken from her home.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first challenges the sufficiency of the evidence to support his convictions. We review de novo a challenge to the sufficiency of the evidence. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). We must review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the essential elements of the crime charged were proved beyond a reasonable doubt. *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "All conflicts in the evidence are resolved in favor of the prosecution." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). "This Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Id*.

-1-

The thrust of defendant's argument on appeal is that the evidence was insufficient to prove his identity as the person who committed first-degree home invasion and larceny in a building.[1] "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime." *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999). "Identity may be shown by either direct testimony or circumstantial evidence[.]" *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967).

In this case, the complainant testified that when she returned to her home after being gone for four days, she saw signs that an intruder had forcefully entered the home, and then heard noises coming from the second story of the house. This testimony supported an inference that someone had broken into the home and that the intruder was still present. When the first police unit arrived, Medley observed a person leaving the house, or who had just left the house through a window on the back side of the house. These circumstances supported an inference that the person coming through the window, or from the side of the house, was the intruder. Medley yelled a command for the person to stop, but the person fled. When Salcedo arrived, he heard Medley yelling commands to someone at the back of the house. Salcedo then heard someone moving through foliage and making contact with the fence. He saw a person, whom he identified as defendant, jump over the fence. Salcedo chased defendant until defendant fell and gave up running. Salcedo did not lose sight of defendant during the chase. Once defendant was apprehended by the police, Medley identified him as the person that he saw exit the home through a window.[2] This sequence of events was sufficient to establish defendant's identity as the person who broke into the complainant's house. Additionally, Medley found on defendant's person small plastic bags containing costume jewelry and old coins, which the complainant identified as her own. These items linked defendant to the break-in and the theft of property from the home.

Defendant argues that the evidence did not support his identity as the perpetrator because a lawn tractor, generator, and other lawn equipment had been moved from the garage, and several firearms had been stacked and prepared for removal. Defendant argues that a vehicle would have been necessary to haul these items away, but the police did not find a vehicle belonging to defendant, or a key to any vehicle in defendant's possession. The prosecution "need not negate every reasonable theory consistent with innocence." *People v Kissner*, 292 Mich App 526, 534; 808 NW2d 522 (2011) (citation and quotation marks omitted). "The evidence is sufficient if the prosecution proves its theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant may provide." *Id*. (citation and quotation marks omitted). The lack of evidence that defendant was prepared to transport large items did not require the jury to ignore the evidence that defendant was observed leaving the complainant's house by a window, that he then led police officers on a short chase, and that items from the complainant's home were found in defendant's possession. Moreover, the jury could have

---

[1] Defendant does not contend in his brief on appeal that the evidence was insufficient to support any of the elements of first-degree home invasion or larceny from a building.

[2] Officer Marcus McClung also identified defendant as the person he saw jump over the fence.

rationally found that there were other explanations for the evidence, a plausible one being that defendant had an unknown accomplice who left in a waiting vehicle when the complainant returned home, before the police arrived, leaving defendant behind without a vehicle.

Defendant also argues that if he had been the perpetrator, he would have been carrying jugs of money that were missing from the complainant's home, not bags containing items of trivial value. Defendant also emphasizes that the prosecutor presented no physical evidence, such as DNA or fingerprints, to prove his presence in the house. He further states that a recovered starter pistol taken from the complainant's home and found on the trail in which the police chased defendant was not examined for fingerprints. These were factors for the jury to consider in its evaluation of the weight and strength of the remaining evidence, but they do not negate the legal sufficiency of the evidence. Again, the jury could have reasonably found that the jugs of money described by the complainant were taken earlier by an unknown accomplice. It could have also determined that the lack of physical evidence was insignificant in light of the testimony that defendant was observed escaping from the complainant's house, and that some of the complainant's property was found in defendant's possession. Viewed in a light most favorable to the prosecution, the evidence was sufficient to prove that defendant was the person who invaded the complainant's home, stole her property, and fled from the house when the police arrived.

## II. JUDICIAL FACT-FINDING AT SENTENCING

Defendant next argues that resentencing is required because the trial court improperly relied on judge-found facts to score the sentencing guidelines, in violation of his Sixth Amendment right to a jury trial. Because this constitutional claim was not raised in the trial court, it is unpreserved. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). An unpreserved Sixth Amendment claim is reviewed for plain error affecting the defendant's substantial rights. *Id.* at 392-393.

In scoring the sentencing guidelines, the trial court assessed 10 points each for Offense Variable (OV) 4, psychological injury to victim, MCL 777.34(1)(a), and OV 19, interference with the administration of justice, MCL 777.49(c). It is undisputed that these scores were based on judge-found facts—i.e., not on facts either admitted by defendant or found by the jury. Contrary to defendant's argument, however, the trial court's reliance on judge-found facts to score the guidelines did not violate defendant's Sixth Amendment right to a jury trial.

In *Lockridge*, the Michigan Supreme Court held that "the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient" because of "the extent to which the guidelines *require* judicial fact-finding beyond the facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range[.]" *Lockridge*, 498 Mich at 364. To remedy this violation, the *Lockridge* Court severed MCL 769.34(2) to the extent that it makes a sentencing guidelines range based on judge-found facts mandatory. *Lockridge*, 498 Mich at 364. As the prosecution points out, in *People v Biddles*, 316 Mich App 148, 158; 896 NW2d 461 (2016), "[t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in

conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range." (Emphasis in original.) "*Lockridge* remedied this constitutional violation by making the guidelines *advisory*, not by eliminating judicial fact-finding." *Id*. Indeed, the Court in *Lockridge* expressly stated that its holding "does nothing to undercut the requirement that the highest number of points possible *must be* assessed for all OVs, whether using judge-found facts or not." *Lockridge*, 498 Mich at 392 n 28 (emphasis in the original).

In this case, defendant was sentenced more than a year after *Lockridge* was decided. A trial court is presumed to know the law. *People v Gaines*, 306 Mich App 289, 303 n 8; 856 NW2d 222 (2014). Defendant does not contend that the trial court was unaware of *Lockridge*, and nothing in the record suggests that the court did not understand that the guidelines were only advisory. Accordingly, there is no merit to defendant's argument that the trial court violated his Sixth Amendment rights by relying on judge-found facts to score the guidelines.

### III. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was deprived of the effective assistance of counsel at trial. Defendant did not raise this issue in a motion or request for an evidentiary hearing in the trial court, and this Court denied defendant's motion to remand for a *Ginther*[3] hearing. Accordingly, our review of this issue "is limited to mistakes apparent from the record." *People v Thorne*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 335262), lv pending; slip op at 3. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). To establish ineffective assistance of counsel, a defendant must show that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Id.* at 188 (citations omitted). "This Court does not second-guess counsel on trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017).

Defendant argues that trial counsel was ineffective for failing to present a defense based on evidence that, from the position described in Medley's testimony, Medley would not have been able to see the window from which defendant allegedly emerged because the garage would have blocked his view of the back of the complainant's house. "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id.* (citation omitted).

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The record does not support defendant's argument that trial counsel's performance was deficient. The prosecutor questioned Medley on direct examination as follows:

> *Q.* As you head to the south side of the garage what do you see?
>
> *A.* I have the flashlight and I see somebody standing in the area here and they look at me and I yell I'm not sure what I said could be many things. But I am pretty sure it was stop or don't move. Um, the person takes off east or excuse me westbound on the south side of the house. . . .
>
> *Q.* All right.
>
> Now when you go around to the rear of the home you said that there is someone standing there. Did you see where that person standing there came from?
>
> *A.* Not exactly but I know it was out of the window or something.

Defense counsel moved to strike Medley's testimony because Medley admitted that he did not know where the person came from. The trial court sustained the objection. The prosecutor continued:

> *Q.* Did you indicate that you saw the person coming out of the window?
>
> *A.* Yes, I'm not sure which window.

The prosecutor stated, "You saw a person" and referred back to Exhibit 4, a photograph of the back of the house. Medley stated:

> I'm going to be honest that picture does not show the full backyard where I could actually show you because I'm not – in my remembrance between this gate there is another window. And the person had already was like oops kind of caught like a deer in the headlights.

The prosecutor asked Medley if he saw the person come out of the window, or if he saw a person standing there. Medley replied, "Coming out," and explained, "I mean like literally just finishing coming out." The prosecutor asked if the window was "at the back of that house?," to which Medley replied, "Yes." On cross-examination, defense counsel questioned Medley about the position of the garage:

> *Q.* Would you agree that the garage from that direction protrudes past any window that you could see if you are standing inside there?
>
> *A.* Once again like I said once I saw the door that was propped [open] I realize that I couldn't go in that way.

Medley further stated:

It was propped open [sic] couldn't get in that way. And I walked back around this car here and that's when I saw somebody in this general area. Like I said the house is huge. So when you're looking at this part here that's part of the garage that's how big the garage would be. There is at least in this picture here another 10 feet of house. So it's not a small house. So like I said this picture does not give you an accurate look into the backyard.

In his closing argument, defense counsel argued that the prosecutor "steered" Medley's testimony about seeing defendant come from the window, stating:

Only one officer after being steered by the prosecutor initially that officer testified on direct questioning by the prosecutor that he saw an individual near the rear window, okay, that's what he stated; walking away from the window.

The prosecutor and if you recall that testimony that key piece of testimony you can see she was taken aback. [The prosecutor] had to tell him wasn't it coming out of the window?

Defense counsel also referred to the photograph of the rear of the house and stated, "You have to go around the corner to get a view of this window, that kitchen window which is said to be the point of entry."

In sum, the record does not support defendant's argument that Exhibit 4 was inaccurately presented to the jury, or that defense counsel failed to address potential misleading aspects of the photo or Medley's testimony. Medley's testimony acknowledged that Exhibit 4 did not accurately depict the back of the house from the perspective of his position when he approached from the side of the house. He also acknowledged that he did not know which window defendant came from. Defense counsel also directly asked Medley if he "agree[d] that the garage from that direction protrudes past any window that you could see if you are standing inside there?" Where the jury was informed that Exhibit 4 may not have accurately depicted Medley's view of the house from his position, defense counsel cross-examined Medley regarding whether the garage affected his view of the side of the house from which he claimed defendant came from, and defense counsel then highlighted the potential problems with Medley's testimony during closing argument, we are not persuaded that defendant was deprived of a substantial defense by trial counsel's decisions with respect to handling Exhibit 4 during trial.

Moreover, contrary to defendant's assertion in his Standard 4 brief on appeal, there is nothing in the record to support his contention that trial counsel did not undertake an adequate investigation with respect to the positioning of the photograph that was admitted into evidence as Exhibit 4. The photograph, along with others, had been taken by a defense investigator. It is unclear from the record whether a photograph with the positioning that defendant claims would have been most advantageous to him did in fact exist. It may very well be that for strategic reasons, trial counsel decided to rely on the introduction of Exhibit 4, as opposed to another photograph, to undermine Medley's testimony. In any event, where (1) trial counsel vigorously questioned Medley concerning his view of the window of the home that he testified that he saw defendant exit from, and (2) the record yields no indication that trial counsel was remiss in his investigation of this case, we are not persuaded that trial counsel engaged in strategic choices

that were undertaken "after less than complete investigation[.]" *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012), quoting *Strickland v Washington*, 466 US 668, 690-691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Put simply, defendant has not established that trial counsel's performance fell below an objective standard of reasonableness. *Solloway*, 316 Mich App at 188.[4]

Defendant also argues that trial counsel was ineffective for failing to interview prosecution witnesses. Defendant has the burden of establishing factual support for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant does not identify the specific witnesses he maintains should have been interviewed. More significantly, he does not indicate what information could have been obtained through interviews. Accordingly, this argument is without merit.

Defendant next argues that trial counsel was ineffective for failing to object to the trial court's jury instruction on the unlawful entry element of first-degree home invasion. Defendant argues that the trial court erroneously instructed the jury on a theory of entering without permission when a theory of breaking and entering would have been more appropriate. We disagree.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *Thorne*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted). "Jury instructions are to be read as a whole and, even if somewhat imperfect, no error exists if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Lockett*, 295 Mich App 165, 185; 814 NW2d 295 (2012).

Breaking and entering a dwelling, and entering a dwelling without permission, are two alternative means of satisfying the unlawful entry element of first-degree home invasion. MCL 750.110a(2); *People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016). The trial court instructed the jury only on the entering without permission theory. While there was evidentiary support for a breaking and entering theory of unlawful entry, the existence of factual support for this theory of entry does not necessarily mean that the evidence did not also support an entering without permission theory of entry. The complainant testified at trial that she did not give any person permission to enter her house while she was away. Trial counsel may have realized that the trial court had instructed the jury on only one theory of unlawful entry—entering a dwelling without permission—but concluded that an objection would not have merely resulted in

---

[4] To the extent that defendant also challenges trial counsel's decision to not impeach Medley with inconsistent statements in his investigative report, the record reflects that trial counsel did indeed question Medley concerning his investigative report. Additionally, trial counsel's decisions regarding how to cross-examine Medley are properly characterized as matters of trial strategy with which this Court will not interfere. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004); *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999).

substituting one theory for another. Instead, given the complainant's testimony that she did not give anyone permission to enter her home while she was away, counsel may have reasoned that an objection would have prompted the trial court to instruct the jury on both alternative forms of unlawful entry, each of which had factual support in the record. Therefore, trial counsel's failure to object to that instruction did not constitute ineffective assistance. "Failing to advance a meritless argument or to raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (citation and quotation marks omitted).

Defendant also argues that trial counsel failed to adequately challenge the prosecution's evidence regarding the elements of unlawful entry and commission of a larceny. In this context, a larceny served as the predicate felony or intended felony element of home invasion and as a necessary element of the offense of larceny in a building. MCL 750.110a(2); MCL 750.360. With respect to unlawful entry, defendant cites alleged conflicts between Medley's testimony and other witnesses' testimony. However, the record does not support defendant's argument that defense counsel failed to address these alleged conflicts. Trial counsel's decisions regarding "[w]hat arguments to make in closing, how to cross-examine witnesses, and what evidence to present all involve matters of trial strategy." *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999). In his closing argument, defense counsel addressed Boudreaux's testimony, indicating that she and Medley had "different versions" of what they observed. Counsel also addressed Boudreaux's testimony that defendant was wearing blue jeans and not khakis as described by Salcedo, and forensic technician Christian Kerr's testimony that he had to go around the garage to reach the kitchen window. There is no basis in the record for second-guessing how defense counsel might have made more effective use of these conflicts in attacking the witnesses' credibility.

Defense counsel also challenged the larceny element by highlighting alleged irregularities in Medley's handling of items that he claimed to have seized from defendant's possession. Medley admitted on cross-examination that he did not tag the two baggies and the stamp book into evidence, and that he failed to mention the stamp book in his report. In closing argument, defense counsel emphasized that Medley failed to tag "key pieces of evidence," and argued that Medley "never preserve[d] these so that you can see them for yourself." Counsel argued that "every physical piece of evidence that could have shed some light on this case, every single piece of evidence was squandered in this case." Defendant also cites the discrepancy between Medley's testimony that the bags contained coins wrapped in fabric, and the complainant's testimony that the coins were wrapped in foil. Although counsel did not mention this discrepancy in closing argument, his decision to instead pursue a strategy of attacking the manner in which evidence was handled and processed was not unreasonable, and provides no basis for second-guessing his performance. *Ayres*, 239 Mich App at 23; *Foster*, 319 Mich App at 391.

Although defendant also argues that trial counsel should have moved to suppress Medley's testimony, he does not state any legal basis for suppression. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Head*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 334255), lv pending; slip op at 9. A review of the record reflects that defense counsel made

reasonable choices with respect to challenging and countering the prosecutor's evidence. Defendant has not established that trial counsel's performance was objectively unreasonable. *Solloway*, 316 Mich App at 188.

## B. *BRADY*[5] VIOLATION

Defendant argues that the prosecutor violated his right to due process by failing to disclose an exculpatory fingerprint analysis. Defendant did not raise this issue in the trial court, leaving it unpreserved. Due process claims, including claims of a violation pursuant to *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), are reviewed de novo on appeal. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). However, "[t]his Court reviews the effect of an unpreserved constitutional error under the plain-error standard." *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009). Defendant has the burden of demonstrating a plain error that affected his substantial rights. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady*, 373 US at 87. "[T]he components of a "true *Brady* violation," are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150, quoting *Strickler v Greene*, 527 US 263, 281-282; 119 S Ct 1936; 144 L Ed 2d 286 (1999).

The allegedly exculpatory fingerprint report prepared by Dawn Engel is not referenced in the lower court record. The parties referenced a possible report in pretrial proceedings, but Eugene Bomber, the officer in charge of the case, testified at trial only that he received results regarding a possible fingerprint lifted from inside the house, but the result was "not usable," which meant that the "latent print people could not process it or get it resolved." There is no record evidence of any report denoting any result from a fingerprint examination that could be considered exculpatory. Accordingly, defendant has not demonstrated a plain error. Defendant asserts, without providing record support, that Dawn Engel, an evidence technician, determined that a print was a "2% match" to defendant. Even if we were to credit this unsupported assertion, defendant does not explain how this result would have "exonerated" him. Defendant thus fails to establish this claim of a *Brady* violation.

Defendant also argues that the prosecutor elicited Bomber's false testimony that the fingerprint was not usable. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). In this case, however, there is no evidence supporting defendant's claim that Bomber's testimony about the fingerprint analysis was false. Therefore, we reject this claim of error.

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

## C. RIGHT TO BE PRESENT AT TRIAL

Defendant asserts in his Standard 4 brief that the trial court violated his right to be present during a critical stage of the trial by giving a portion of the jury instructions in the jury room, outside of defendant's presence. See *United States v Gagnon*, 470 US 522, 526; 105 S Ct 1482; 84 L Ed 2d 486 (1985); *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984); MCL 768.3. There is no record support for this assertion. The transcript indicates that the trial court instructed the jury in the courtroom, and then supplied it with a written copy of its instructions to take to the jury room. There is no indication in the transcript that the trial court gave the jury additional instructions, in either the courtroom or the jury room, when defendant was not present.

## D. PROSECUTOR'S ABUSE OF CHARGING DISCRETION

Defendant argues that the prosecution abused its discretion in charging him with both first-degree home invasion and larceny from a building. "It is well settled that the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor." *People v Conat*, 238 Mich App 134, 149; 605 NW2d 49 (1999) (quotation marks and citation omitted). Judicial review of the exercise of the prosecutor's discretion "is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires." *Id*. Defendant argues that his dual charges of home invasion and larceny in a building were improper because the house with the attached garage was "one dwelling," thus requiring "two separate breaks" to support the separate charges. He asserts that the prosecutor "divide[d] a single major offense into an unreasonable number of related components."

Defendant was not charged with multiple counts of either first-degree home invasion or larceny for separate breakings involving the home and the garage. Rather, he was charged with one count each for a single breaking and theft of property from the complainant's dwelling. To the extent that defendant's argument is directed at the double jeopardy prohibition against multiple punishments for the same offense, US Const, Am V; Const 1963, art 1, § 15, we reject this claim of error. "The purpose of the double jeopardy protection against multiple punishments for the same offense is to protect the defendant from having more punishment imposed than the Legislature intended." *People v Dickinson*, 321 Mich App 1, 10; 909 NW2d 24 (2017) (citation and quotation marks omitted). Where the Legislature clearly intends to impose multiple punishments, imposition of such multiple penalties does not violate the constitution, even where the offenses share the "same elements." *People v Smith*, 478 Mich 292, 316; 733 NW2d 351 (2007). The first-degree home-invasion statute provides: "Imposition of a penalty under this section does not bar imposition of a penalty under any other applicable law." MCL 750.110a(9). "By its plain language, this statute authorizes punishment for another crime, a clear indication of legislative intent to allow multiple punishment." *People v Shipley*, 256 Mich App 367, 378; 662 NW2d 856 (2003); see also *People v Conley*, 270 Mich App 301; 715 NW2d 377 (2006) (in MCL 750.110a(9), "the Legislature clearly expressed an intent to allow multiple punishments . . . of both first-degree home invasion and another crime for the same incident."). Therefore, defendant's charges and convictions of both first-degree home invasion and larceny in a building do not violate his rights against double jeopardy.

Affirmed.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood