# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SANTEE WALL,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2016

No. 326979
Kalamazoo Circuit Court
LC No. 2014-001687-FH

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Following a bench trial, the trial court convicted defendant of possession of burglar's tools, MCL 750.116, breaking and entering of a vehicle with damage to the vehicle, MCL 750.356a(3), and attempted breaking and entering to steal property less than $200, MCL 750.356a(2)(a). Defendant raises several challenges to his convictions and sentences, both through appellate counsel and in an in pro per brief filed pursuant to Administrative Order No. 2004-6, Standard 4. These claims all lack merit and we affirm.

## I. BACKGROUND

On October 17, 2014, defendant engaged in a robbery spree, breaking and entering vehicles parked outside shops in Portage and stealing items inside. Around 4:30 p.m., Cash Store employee, Leslie Seda, noticed that someone had broken out a window of her car and stole mail, a dentist office receipt, and a bank statement. Seda contacted the police, who arrived at approximately 5:00 p.m.

Sometime between 5:00 and 6:00 p.m., Richard Campbell lay in his car parked outside the AT&T store where he worked, attempting to nap during his lunch hour. Campbell's windows were tinted, obscuring him from view. He heard someone outside loudly and repeatedly yanking on the door handle of a neighboring vehicle. Campbell looked out and saw that the individual had material wrapped around his hand so that it did not touch the handle directly. Campbell exited his vehicle and confronted the man, who he described as a six-foot-tall African-American man wearing a flannel shirt and a brown beanie. The man ran off and Campbell went into the store to summon the police. In Campbell's absence, the vehicle's owner returned and drove off, likely unaware that anything was amiss.

-1-

Officers pursued the suspect along the escape route described by Campbell. They went into a nearby fast food restaurant and learned that the suspect had cut through the business. The officers moved on to the parking lot of a Red Robin restaurant where a concerned citizen stopped them to report that a suspicious man had gone inside.

Inside the restaurant, waitress Sierra Smith reported that a tall African-American man wearing a flannel shirt and a hat had been seated in a booth for 10 to 15 minutes. The man ordered a beverage and asked to borrow a telephone book so he could call a cab. The man stuck out in Smith's memory because he had only one hand. The officers found the subject booth empty and so proceeded to the men's restroom. As the officers approached, a tall African-American man with only one hand exited. He was wearing a white t-shirt, but a flannel shirt and beanie hat were found in the bathroom trashcan. Campbell identified the man in the Red Robin parking lot as the perpetrator despite that he was attired differently. Campbell indicated that he recognized the man because he had "the same facial hair and same size stature." Wrapped up with the flannel shirt and beanie, officers found mail addressed to Seda, cash, receipts, handwritten notes, bus tickets, a cell phone, a flashlight, and a metal hole punch of the type used by robbers to break out windows.[1]

Based on this evidence, the court convicted defendant of successfully breaking into Seda's car, attempting to break into the car parked next to Campbell, and possession of burglar's tools.

## II. ADEQUACY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence to support his convictions. He also challenges the trial court's denial of his motion for a new trial based on his claim that his convictions were against the great weight of the evidence. We review challenges to the sufficiency of the evidence de novo, viewing the evidence "in the light most favorable to the prosecution" to determine whether a rational trier of fact "could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Special deference is given to a trial court's findings when based on witness credibility." *People v Sherman-Huffman*, 241 Mich App 264, 267; 615 NW2d 776 (2000).

We review for an abuse of discretion a trial court's rejection of a defendant's motion for a new trial. *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (2013). A verdict is against the great weight of the evidence if "the evidence preponderates so heavily against the verdict" that allowing the verdict to stand "would be a miscarriage of justice." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). "The trial court may vacate a verdict only when it does not find reasonable support in the evidence, but is more likely attributable to

---

[1] The court considered only those items directly connected to the robbery from Seda's vehicle and excluded the rest.

factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *Plummer*, 229 Mich App at 306.

Both through counsel and in his in pro per brief, defendant contends that the police investigation into this case was lackadaisical and therefore inadequate evidence was gathered and presented. Defendant notes that the officers failed to check Seda's car and the various items found in the Red Robin trash receptacle for DNA or fingerprint evidence. There was no evidence that defendant had possessed the "burglar's tool" found in the discarded shirt's pocket, defendant insists, as anyone in the restroom could have snuck the tool into the shirt. No forensic evidence connected the hole punch to the breaking and entry of Seda's car.

Defendant challenges the adequacy of the identification evidence, emphasizing that the witnesses gave differing accounts of the suspect's clothing and that no one observed the robbery in Seda's vehicle. Defendant further complained that the investigating officers took no evidence regarding who else may have recently used the Red Robin bathroom and posed no questions to the other men in the bathroom at that time.

In relation to the attempted breaking and entering conviction, defendant argues that no evidence was presented to establish intent, thereby negating the factfinder's conclusion that he bore the intent to steal property valued at less than $200. Citing the corpus delicti rule, defendant asserts that the absence of a car or complainant vitiated the attempted breaking and entering verdict as well.

Contrary to defendant's many protestations, the evidence was sufficient to support defendant's convictions and those convictions were not against the great weight of the evidence. Someone attempted to break into a vehicle parked next to Campbell shortly after and near where another vehicle was successfully burgled, suggesting that the same individual was involved in both crimes. Campbell observed the suspect in close proximity. As the individual had covered his hand to prevent leaving fingerprints, it was unlikely the person owned the vehicle he was trying to enter. And Campbell had ample opportunity to observe the individual's features so he could later identify him.

The officers followed the evidence through the fast food restaurant and to the Red Robin parking lot, where a citizen witnessed a similarly clad man go inside. A waitress seated a man matching the suspect's description and wearing the clothes described by Campbell. And defendant exited the bathroom shortly after someone placed the shirt and hat described by Campbell into the trashcan. Intertwined with the shirt and hat was paperwork stolen from Seda's vehicle. A tool was also located that could have assisted the culprit in breaking Seda's window. Once the officers brought defendant outside, Campbell positively identified him despite that he had altered his clothing in the interim.

Although this evidence was circumstantial, it was more than adequate to link defendant to the charged offenses. Forensic analysis was not required to solidify the case beyond any possible doubt. The officers did not question the other men in the restroom because the suspect was identified as African American and defendant was the only African-American male in close vicinity. And Smith positively testified that the man matching Campbell's description of the suspect came into the restaurant and had only one hand. Defendant, who has only one hand,

came out of the bathroom just after someone placed the suspect's clothing in the trashcan. The coincidence was too great for the factfinder to ignore.

In relation to the attempted breaking and entering charge, defendant contends that there was no record evidence that he acted with the intent to steal property valued under $200. To support a conviction for an attempted violation of MCL 750.356a(2), the prosecution must prove that the defendant attempted to "enter[] or break[] into a motor vehicle . . . to steal or unlawfully remove property." Under subsection (2), a defendant can be convicted of a misdemeanor if the value of the subject property is under $200. MCL 750.356a(2)(a). The statute provides progressively harsher penalties as the value of the property increases. Here, there was no direct evidence of the value of any property within the vehicle. However, the prosecution presented evidence that defendant unlawfully took property valued under $200 from Seda's vehicle. Additional materials were found in the Red Robin bathroom trashcan suggesting that defendant had committed similar petty thefts in other vehicles that day. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). A reasonable factfinder certainly could discern from the circumstantial evidence presented that defendant intended to steal under $200 in property if he successfully entered the vehicle in the AT&T parking lot.

Defendant also contends that he could not be convicted of attempted breaking and entering because the corpus delicti of the offense—the car and its owner—were never located. The corpus delicti is "[t]he body of a crime." It is the "material substance[] upon which a crime has been committed." *Black's Law Dictionary* (6th ed), p 344. In Michigan,

> The corpus delicti rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur. Specifically, the rule provides that a defendant's confession may not be admitted unless there is direct or circumstantial evidence independent of the confession establishing (1) the occurrence of the specific injury (for example, death in cases of homicide) and (2) some criminal agency as the source of the injury. [*People v Konrad*, 449 Mich 263, 269-270; 536 NW2d 517 (1995) (citations omitted).]

Defendant made no confession in this case; a third-party with no interest in defendant or the subject property witnessed defendant's acts and reported him to the police. The corpus delicti rule is not implicated.

## III. ASSISTANCE OF COUNSEL

Defendant challenges the performance of his trial counsel. He contends that counsel should have secured forensic testing of the evidence and highlighted the inadequacy of the evidence based on the lack of forensic evidence in combination with the officers' meager investigation. In his in pro per brief, defendant adds that counsel should have filed a motion to suppress the evidence found in the restroom trashcan because it was handled improperly. He contends that counsel should have argued his innocence because the bus tickets found in the garbage can bore the name "James Osby," implicating that individual in the offense. Moreover,

defendant contends that Smith would not have been able to identify him as the suspect if a lineup had been conducted, supporting that counsel should have insisted on this action.

Defendant filed a motion in the trial court for a new trial or an evidentiary hearing based on counsel's performance, but the motion was denied. Our review is therefore limited to errors plain from the existing record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902; 870 NW2d 893 (2015).]

Failure to make a reasonable investigation can constitute ineffective assistance of counsel. *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *In re Ayres,* 239 Mich App 8, 22; 608 NW2d 132 (1999). The reasonableness of an attorney's investigation is determined by considering whether the known evidence would lead a reasonable attorney to investigate further. *Wiggins v Smith*, 539 US 510, 527; 123 S Ct 2527; 156 L Ed 2d 471 (2003). In order to overcome the presumption of sound trial strategy, the defendant must show that trial counsel's failure to prepare for trial resulted in counsel's ignorance of valuable evidence that would have substantially benefited the accused. *People v Bass*, 223 Mich App 241, 252; 581 NW2d 1 (1997), citing *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990).

On this record, there is no indication that DNA or fingerprint analysis of the items located in the Red Robin restroom would have revealed valuable, exculpatory evidence. Obtaining fingerprint or DNA evidence actually could have supplied direct evidence of defendant's guilt in this otherwise circumstantial case. Counsel could have reasonably determined that the safer course was to challenge the adequacy of the evidence available and leave well enough alone.

Defendant contends that counsel should have highlighted the shortcomings in the officers' investigation, specifically the failure to conduct forensic analysis of the evidence and to question the other individuals present in the Red Robin bathroom. Defense counsel did elicit

-5-

testimony to emphasize these failures, however, and defendant's claim is completely without merit.

In his in pro per brief, defendant claims that defense counsel should have attempted to argue his innocence because bus tickets issued to James Osby were found in the trashcan, implicating that individual in the offenses. However, many of the items found tangled with the flannel shirt in the trashcan belonged to others. The officers also found mail addressed to Seda as well as other miscellaneous items. Instead, defense counsel successfully urged exclusion of the tickets from evidence because they were not connected to the charged crimes and presenting evidence of additional offenses would be unduly prejudicial. Defense counsel therefore acted within the realm of sound judgment.

Defendant contends that his counsel should have sought suppression of the evidence uncovered in the Red Robin bathroom because it was "improperly handled." There is no record indication whether the officer collecting the evidence wore gloves when he removed the items from the trashcan. The officer placed the items in a reusable plastic bag rather than an official evidence bag. The items were then intermingled with property removed from defendant's person at the county jail. Had forensic evidence been necessary to establish the elements of the charged offenses in this case, defense counsel likely should have challenged the officers' actions. However, Campbell caught defendant red-handed in an attempt to break and enter a vehicle and positively identified him only 15 to 20 minutes after the offense. Circumstantial evidence linked this defendant to the robbery in Seda's car. Forensic evidence or the lack thereof played no role in the case. Accordingly, defense counsel had no reason to seek suppression on this ground.

Defendant next argues that counsel was deficient in failing to secure a corporeal lineup with Smith. Defense counsel *did* request a corporeal lineup during the preliminary examination in district court. The district court found that eye witness identification was not a material issue for trial and denied the motion. Defense counsel cannot be deemed ineffective when he or she does the very action urged.

## IV. ARRAIGNMENT/HABITUAL OFFENDER STATUS

Defendant contends that the prosecution belatedly notified him that the state intended to seek a sentence enhancement based on his habitual offender status and that his rights were violated because he was never arraigned in the circuit court. Had the arraignment occurred, defendant would have been notified of the habitual offender sentencing enhancement at that time, defendant notes.

Our review of the lower court file and register of actions suggests that defendant was never arraigned in the circuit court. Generally, MCL 769.13(1) requires the prosecution to provide a habitual offender notification within 21 days of arraignment. Where an arraignment is not held, however, "MCL 769.13(1) clearly contemplates that . . . the period for filing the habitual-offender notice is to be measured from the date the information charging the underlying offense is filed." *People v Marshall*, 298 Mich App 607, 627; 830 NW2d 414 (2012). The prosecution filed the information and habitual-offender notice on the same day. Accordingly, the habitual offender notice was timely.

Moreover, contrary to defendant's claim, the lack of arraignment does not require reversal. "The purpose of an arraignment is to provide formal notice of the charge against the accused." *People v Waclawski (After Remand)*, 286 Mich App 634, 704; 780 NW2d 321 (2009). Generally, a defendant must be arraigned on the information. MCR 6.113(A). At the arraignment, the court reads the information to the accused and offers the defendant the opportunity to enter a plea. *Waclawski*, 286 Mich App at 704. While the lack of an arraignment may warrant reversal, *Grigg v People*, 31 Mich 471, 472-473 (1875), such relief is not warranted where the trial occurs "as if all formalities had been complied with." *People v Weeks*, 165 Mich 362, 365; 130 NW 697 (1911). Here, defendant was provided a copy of his information, along with the habitual offender notice, and had the opportunity to discuss this document with his counsel. Trial commenced with no irregularities and defendant's rights were protected. Accordingly, reversal is not warranted.

## V. ACCURACY OF PSIR

Finally, defendant asserts that the presentence investigative report (PSIR) contains an inaccurate statement requiring correction. In the agent's description of the offense, the preparer indicates that three hours elapsed between the attempted breaking and entering in the AT&T parking lot and defendant's arrest at Red Robin, rather than 10 to 30 minutes as established at trial.

We first note that this information is completely irrelevant to the severity of the crime, played no role in the calculation of the sentencing guidelines, and can have no impact on defendant's treatment during imprisonment. Moreover, defendant waived his right to challenge the correctness of this information by expressly approving the PSIR's accuracy at the sentencing hearing. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

We affirm.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher