*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ALLEN MONROE GRAYS,

      Defendant-Appellant.

UNPUBLISHED
June 24, 2021

No. 350627
Kent Circuit Court
LC No. 18-009548-FC

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant, Allen Monroe Grays, appeals by right his jury trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b (multiple variables); assault with intent to do great bodily harm less than murder or by strangulation (AWIGBH), MCL 750.84; and aggravated assault, MCL 750.81a. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 20 to 40 years' imprisonment for CSC-I, 20 to 40 years' imprisonment for AWIGBH, and 266 days' imprisonment for aggravated assault. On appeal, defendant challenges the introduction of other-acts evidence under MRE 404(b) and the effective assistance of his trial counsel. We affirm.

## I. BACKGROUND

This case arises out of defendant's sexual and physical assault of the victim, who was working as a prostitute at the time of the offense. Defendant picked up the victim from a store and took her to his house, where they engaged in consensual, vaginal intercourse. When defendant's girlfriend came home and found them, defendant became angry with the victim for not lying about why they were there. The victim insisted that defendant drive her back to where he had picked her up. The defendant became angrier , battered the victim and choked her. At one point, he pulled the car over, got on top of the victim, and repeatedly strangled her while calling her names. At a new location, he again battered and strangled her before sexually assaulting her. Eventually, the victim was able to open the door and slide out of the car. Defendant pulled the door shut and drove away. The victim crawled to a nearby apartment and asked someone to call 911. The victim spoke

with officers at the scene and at the hospital. Defendant was charged with CSC-I and assault with intent to do great bodily harm less than murder or by strangulation.

At trial, Jennifer Rinvelt, a registered nurse, testified as an expert in the area of sexual assault examinations. Rinvelt examined the victim on the day of the incident, and the victim told her about the assault. The victim was diagnosed with a nasal fracture at the emergency room and later required plastic surgery. Rinvelt observed bruising underneath the victim's eyes, a laceration to her nose, bruising on her right check, redness on her neck, a bruise on her left arm, multiple abrasions on her right knee, an abrasion on her right arm, and two abrasions on her back, all that appeared to be recent. The victim had a sore throat, neck pain, and nausea, and she reported that it hurt to swallow, she felt dizzy, and she had a headache. Rinvelt heard that the victim's voice was raspy and hoarse. The victim reported vaginal pain, and Rinvelt saw that there was redness on the victim's labia and a "laceration to her fossa navicularis". The jury also heard testimony from Rikki Dietrich who claimed that defendant sexually assaulted and strangled her in 2009.

The parties stipulated to add a charge of aggravated assault to the CSC and assault charges. A jury found defendant guilty of all three charges. This appeal followed.

## II. MRE 404(B) OTHER-ACTS EVIDENCE

Defendant first argues that the trial court erred by admitting other-acts evidence under MRE 404(b). We disagree.

## A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's admission of bad-acts evidence. *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009). A trial "court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. This Court reviews de novo preliminary questions of law. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). A determination whether "the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony." *Waclawski*, 286 Mich App at 670. Even if the trial court erred by admitting bad-acts evidence, reversal is not required unless the defendant affirmatively shows that it is more probable than not that the error was outcome-determinative. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001).

## B. ANALYSIS

MRE 404(b)(1) provides that evidence of other acts "is not admissible to prove the character of a person in order to show action in conformity therewith." However, the evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act." MRE 404(b)(1). The use of bad-acts as evidence of a defendant's character is excluded, except as allowed by MRE 404(b), in order to avoid the danger of a conviction on the basis of a defendant's history. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). The list of exceptions in MRE 404(b) is nonexhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). In order for bad acts to be admissible under MRE 404(b), the proponent of the evidence must show that the other-acts evidence has a proper purpose other than to show character, the evidence is relevant to an issue of consequence,

and the danger of unfair prejudice does not substantially outweigh the probative value. *People v Steele*, 283 Mich App 472, 479; 769 NW2d 256 (2009), citing *Sabin (After Remand)*, 463 Mich at 55-56.

A trial court must carefully consider the logical relationship between the evidence and the fact in issue. *People v Orr*, 275 Mich App 587, 589; 739 NW2d 385 (2007). "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *Sabin (After Remand)*, 463 Mich at 63-64. The acts need not be part of a "single continuing conception or plot" in order to be logically relevant. *Id*. at 64. However, a general similarity is not enough to establish a plan, scheme, or system. *Id*. "If the prosecution creates a theory of relevance based on the alleged similarity between a defendant's other act and the charged offense, we require a 'striking similarity' between the two acts to find the other act admissible." *People v Denson*, 500 Mich 385, 403; 902 NW2d 306 (2017). When the theory of relevance is not on the basis of similarity, the striking similarity is not required. *Id*. A prosecutor deprives a defendant of a fair trial if he or she argues that the jury should consider evidence that was admitted for a limited purpose for a different purpose. *People v Quinn*, 194 Mich App 250, 253; 486 NW2d 139 (1992). "MRE 404(b) is a rule of inclusion rather than a rule of exclusion." *People v Brown*, 294 Mich App 377, 385; 811 NW2d 531 (2011).

MRE 403 provides that a trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "MRE 403 does not prohibit prejudicial evidence; rather, it prohibits evidence that is *unfairly* prejudicial." *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). "[E]vidence is unfairly prejudicial when there exists a danger that marginally probative evidence might be given undue weight by the jury." *Id*. Upon request, a trial court may provide a limiting instruction. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

Before trial began, the prosecution provided notice that it intended to introduce testimony of a prior act, committed against Rikki Dietrich pursuant to MRE 404(b), in order to show that defendant "used the common plan and scheme when assaulting the current victim" and a previous victim. Defense counsel objected, but the trial court found that there were "more than adequate similarities."

Dietrich testified regarding a 2009 incident when defendant picked her up to engage in vaginal intercourse in 2009. She was a sex worker at the time. Dietrich stated that the defendant drove to a remote area, choked and battered her, and sexually assaulted her. She gave a detailed account of the incident including the fact that she had feared for her life. Dietrich took down defendant's license plate and reported the assault. A police officer testified that when interrogated, the defendant said that it was Dietrich's idea that he choke her, so he applied some pressure with one hand, but he did not like it and let go when Dietrich said that she could not breathe. Defendant said that Dietrich also suggested the oral and anal sex.

In its closing argument, the prosecution discussed similarities between the incidents and twice stated that the jury was not there on the basis of what Dietrich alleged that defendant had

done, but instead because of defendant's charges against the victim. Defense counsel stated that defendant punched the victim, but did not strangle or sexually assault her. The trial court provided a limiting instruction on the jury's use of the other-acts evidence.

In this case, the trial court did not abuse its discretion by admitting the other-acts evidence. First, the prosecution must offer the other-acts evidence for a purpose other than to prove character or propensity. *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993). In this case, the prosecution offered the evidence to show that defendant "used the common plan and scheme when assaulting the current victim" and the witness from the 2009 incident, which is a proper purpose under MRE 404(b). See *Sabin (After Remand)*, 463 Mich at 63-64.

The trial court's next determination is whether the evidence is relevant. See *Vandervliet*, 444 Mich at 74. Defendant specifically argues that the two incidents were too remote in time to be part of a common plan or scheme and, further, that defendant had many interactions with prostitutes, so the fact that there were only two complaints did not show evidence of a common plan. However, the nine years between the two incidents does not preclude from the admissibility of the evidence. See *Brown*, 294 Mich App at 387; *People v McGhee*, 268 Mich App 600, 611; 709 NW2d 595 (2005). This Court has held that even greater periods between incidents do not necessarily dispel the probative value of the evidence if the incidents were similar enough. See *Knapp*, 244 Mich App at 380. In this case the similarity between the incidents is a "striking similarity." See *Denson*, 500 Mich at 408; *Steele*, 283 Mich App at 480. Both of the victims were engaged in prostitution and alleged that defendant sexually assaulted them in his car. See *People v Hine*, 467 Mich 242, 252-253; 650 NW2d 659 (2002); *Waclawski*, 286 Mich App at 672. Both victims alleged that defendant became angry and verbally aggressive, and that he punched and choked them. The record shows that defendant moved the victims to secluded locations to commit his assaults.. See *Sabin (After Remand)*, 463 Mich at 65-66; *Knapp*, 244 Mich App at 379-380. Therefore, the evidence was logically relevant and admissible as a common plan to dispute defendant's defense that he had merely punched the victim. See *id*. at 67.

Because the evidence is relevant, the trial court must then determine whether the evidence is admissible under MRE 403. See *VanderVliet*, 444 Mich at 74-75. In this case, the trial court did not explicitly refer to MRE 403 when determining that it would admit the evidence. The record shows that the trial court addressed the similarities, but did not explicitly address the balancing of prejudicial effect and probative value under MRE 403 on the record. However, a trial court is not required to articulate its analysis in such detail on the record. See *People v Gaines*, 306 Mich App 289, 302 n 8; 856 NW2d 222 (2014); *People v Smith*, 243 Mich App 657, 675; 625 NW2d 46 (2000);; *People v Bolden*, 92 Mich App 421, 435; 285 NW2d 210 (1979). The trial court is presumed to know the law which required such a balancing test. See *Gaines*, 306 Mich App at 302 n 8.

On this this record we find that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice . See *Waclawski*, 286 Mich App at 669-670. In this case, the evidence of defendant's assault on Dietrich was highly probative of whether defendant used a common scheme in assaulting the victim and whether he strangled and sexually assaulted her, and the evidence was not substantially outweighed by the danger of unfair prejudice. See *Sabin (After Remand)*, 463 Mich at 70-71. Defendant argues that the 2009 case was more graphic and "improperly inflamed the jury". Both assaults resulted in significant injury. In point of fact,

the offense in this case resulted in the more significant injury. We cannot find that the admission of the prior assault was unfairly prejudicial. See *People v Danto*, 294 Mich App 596, 600; 822 NW2d 600 (2011).

Additionally, although defendant argues that Dietrich's testimony that she wanted justice was "likely to evoke emotional responses from the jury," the prosecution repeatedly and clearly explained that the jury was not to find defendant guilty on the basis of what Dietrich alleged that he had done to her. But see *Denson*, 500 Mich at 412. Further, the trial court properly provided a limiting instruction to the jury, explaining how the jury could use the prior-acts evidence. See *People v Waclawski*, 286 Mich App 634, 674; 780 NW2d 321 (2009); *Knapp*, 244 Mich App at 380; *Smith*, 243 Mich App at 675. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant argues that the error in admission was outcome-determinative. However, even had the trial court erred by admitting the evidence, there was a substantial amount of independent evidence that defendant punched, strangled, and sexually assaulted the victim. The arresting officer saw that the victim's belt was undone, she was covered in blood, and she was distraught. The medical evidence of her injuries was extensive. Substantial evidence outside of Dietrich's testimony supported defendant's conviction, and reversal is not warranted. See *Knapp*, 244 Mich App at 380-381.

Defendant additionally argues that this Court should express disagreement with *Sabin* and that the Michigan Supreme Court should reconsider *Sabin* in order to hold that other-acts evidence should only be admitted when it is part of a "true plan." We decline defendant's invitation. This Court is bound to follow decisions of our Supreme Court unless those decisions have been overruled or superseded. See *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987). There is no indication that the Legislature has passed or amended any law that has superseded any law affecting our Supreme Court's decision in *Sabin*. Nor has *Sabin* been overruled. Instead, our Supreme Court has repeatedly applied the law from *Sabin*. See, e.g., *Denson*, 500 Mich at 408; *Knox*, 469 Mich at 512; *Hine*, 467 Mich at 252-253.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

In his attorney brief, defendant argues that he was denied the effective assistance of trial counsel because his counsel failed to "bring all the reasons for excluding the other-act evidence to the judge's attention in time to assist the judge's ruling". We reject this claim as a proper basis for ineffective assistance.

The determination whether a defendant had the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). This Court reviews for clear error a trial court's findings of fact and reviews de novo questions of law. *Id*. However, as in this case, when a defendant has not preserved the claim that his or her counsel was ineffective, this Court is limited to review for mistakes apparent on the record. *Id*.

For a defendant to establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was objectively deficient and that the deficient performance

-5-

prejudiced the defense. *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). A counsel's performance was deficient if it fell below an objective standard of reasonableness under prevailing professional norms. See *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel's performance prejudiced the defense if there is a reasonable probability that, but for the counsel's error, the outcome would have been different. See *id*. Failing to raise a futile objection does not constitute ineffective assistance of counsel. See *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Id*.

Specifically, defendant contends his trial counsel was ineffective because he "neglected to raise winning arguments in support of his motion in limine."[1] Defendant raises multiple arguments on appeal against the admission of 404(b) evidence. Of these, he fails to identify which would be "winning arguments." "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Additionally, counsel is not ineffective for failing to raise every conceivable argument or for failing to raise a more successful argument. "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Further, "failure to raise every conceivable issue does not constitute ineffective assistance of counsel." *People v Reed*, 198 Mich App 639, 646; 499 NW2d 441 (1993). The standard is objective reasonableness, not perfection. While counsel's strategy ultimately was not successful, it was not unreasonable. At trial, counsel objected to the admission of the 2009 assault based on its remoteness in time, there not having been any incidents since the instant case, and the defense trial theory that sexual assault accusations were only made in conjunction with nonpayment for services. We find no apparent mistakes in this record.

In his Standard 4 brief, defendant argues that trial counsel was ineffective for failing 1) to call emergency room attending physician Dr. Stephanie Gerow-Beyer or introduce Gerow-Beyer's report, 2) to interview or subpoena the medical expert who performed the victim's CT scan, and 3) to remove seven jurors for cause. We review these unpreserved issues for mistakes apparent on the record. *Heft*, 299 Mich App at 80.

Decisions regarding whether to call or question witnesses and what evidence to present are presumed to be matters of trial strategy that will not be second-guessed on appeal. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008); *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Failure to present evidence only rises to ineffective assistance if defendant is deprived of a substantial defense. *People v Hoyt*, 185 Mich App 531, 537-538; 462 NW2d 793 (1990). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). "A defendant is entitled to have his counsel prepare, investigate, and present all substantial defenses." *In re Ayres*, 239 Mich App 8,

---

[1] We note that no motion in limine was found in the trial court record and none was provided to this Court on appeal thus, we review this claim based on counsel's oral motion in limine made in the trial court.

-6-

22; 608 NW2d 132 (1999), superseded in part on other grounds as stated in *People v Dipiazza*, 286 Mich App 137; 778 NW2d 264 (2009).

Defendant argues the medical report or Gerow-Beyer's testimony would have been beneficial to the defense for impeachment and to enforce defendant's theory that the victim was lying about the assault. The victim's medical report contained a DNA lab report, a CT scan of the victim's neck, and Gerow-Beyer's provider notes. According to defendant, the beneficial portions of this evidence were as follows: 1) The lab report indicated the possible presence of male DNA from the victim's vaginal swab and no male DNA from the victim's anal and oral swabs; 2) Gerow-Beyer's notes indicated that the CT scan of the victim's neck showed no abnormality, "low suspicion of laryngeal injury", and that the victim had no problem swallowing; and 3) Gerow-Beyer's notes also indicated that the victim's sister said that the victim may have come to the emergency department seeking drugs. Defendant contends that the only logical explanation for defense counsel not introducing this evidence was because he failed to discover it through proper investigation.

We disagree and find that it was reasonable trial strategy for defense counsel to have not introduced the victim's medical report or called Gerow-Beyer to testify at trial. Omission of the lab report from evidence was not outcome determinative error. The most the report would have done was to contradict the victim's claim that defendant forced his penis into her mouth, given the absence of male DNA in the oral swab. The lab report did not show that a sexual assault did not happen. There was no dispute that defendant and the victim engaged in consensual vaginal sex before the sexual assault and there was no claim of anal sex, consensual or otherwise.

It was also sound trial strategy for defense counsel to have not introduced Gerow-Beyer's notes and examination of the victim. Gerow-Beyer's examination was two days after the October 3, 2018 incident. Neither the provider's testimony nor notes would have successfully impeached the testimony from the trauma nurse who examined the victim on the day of the assault and made note of the victim's redness on her neck, sore throat, neck pain, bruising, lacerations, and complaints of pain during swallowing. In fact, Gerow-Beyer's report would have done more damage than good in that it reported the victim still had pain in her lower back, right ribs, and neck, was coughing, and had a hoarse voice. Further, Gerow-Beyer's report contained the victim's full and consistent narrative of the assault from two days prior. Introducing the notes or provider's testimony just to show that the victim did not have trouble swallowing and was drug seeking two days later, was not worth the risks in also introducing the balance of the report.

Neither can we fault defense counsel for not calling the radiologist who performed the CT scan or another similar imaging expert to testify that the neck appeared unremarkable and without injury. For purposes of MCL 750.84(2), strangulation "means intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." It does not require injury to the throat or its internal structures. Thus, an expert would not have successfully impeached the victim's testimony that she was strangled by defendant and Rinvelt's testimony corroborating that the victim showed signs of strangulation.

Defendant next argues counsel was ineffective for failing to challenge seven jurors for cause on the basis of alleged biases. We disagree.

A defendant in a criminal trial has a constitutional right to be tried by an impartial jury. US Const Ams VI and XIV; Const 1963, art 1, § 20. "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 257; 631 NW2d 1 (2001). "A juror's promise to keep the matters of her personal life separate from defendant's case [is] sufficient to protect defendant's right to a fair trial." *Id*. "[W]hen citizens have been sworn to tell the truth, and testify under oath that they can be impartial, the initial presumption is that they are honoring their oath and are being truthful." *People v DeLisle*, 202 Mich App 658, 663; 509 NW2d 885 (1993). "[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *Johnson*, 245 Mich App at 259; 631 NW2d 1 (2001) (internal citations omitted). "Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008). As a reviewing Court, we "cannot see the jurors or listen to their answers to voir dire questions." *Id*. (citation omitted). "For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *Id*.

"A prospective juror is subject to challenge for cause on any ground set forth in MCR 2.511(D) or for any other reason recognized by law." MCR 6.412(D)(1). Relevant to this case, MCR 2.511(D) provides that a juror may be challenged for cause when the juror:

(2) is biased for or against a party or attorney;

(3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be;

(4) has opinions or conscientious scruples that would improperly influence the person's verdict;

* * *

(12) is interested in a question like the issue to be tried.

Four of the seven jurors at issue stated that they knew someone who had been a victim of sexual assault. During voir dire, potential juror #2 admitted she had been a victim of sexual assault and had a cousin and friend who had also been sexually assaulted. Defendant argues potential juror #2 should have been challenged for cause under MCR 2.511(D)(12). However, defense counsel specifically followed up with this juror, asking whether she could be fair and impartial in defendant's case and this potential juror indicated that she would rely on the evidence to determine a conviction. Potential juror #4 told the court that his significant other was sexually assaulted and that he may have some bias because of that incident however, when asked if he could be fair in this case, potential juror #4 said he could. Potential juror #9 stated a close family member was sexually assaulted and that he absolutely believed his family member when she disclosed to him. This potential juror gave no indication that he could not be fair and impartial in defendant's case. Potential juror #8 worked with sexual abuse victims as a psychologist. However, he indicated that he wanted to hear all the evidence and would judge the credibility of the victim before making a

decision as to defendant's guilt or innocence. Potential juror #3 was an elementary school teacher who admitted she had strong feelings about people putting their hands on other people and not listening when someone said "no". Defendant argues this potential juror should have been challenged for cause under MCR 2.511(D)(2) and (4). However, this potential juror admitted that she would have difficult time with this case had there been a child victim and stated she could be fair in defendant's case. Defendant argues potential juror #11 should have been challenged for cause under MCR 2.511(D)(3) because she said "I think I could be fair" and the thought of the CSC case made her "cringe". However, this same potential juror said defendant was innocent until proven guilty. Last, defendant argues potential juror #13 should have been challenged for cause because this potential juror stated that if she were an innocent accused, she would want to prove her innocence as best she could. Defendant asserts that this potential juror expected defendant to testify. However, this potential juror did not say that she expected defendant to testify or would hold it against him if he did not. This potential juror also agreed that there could be valid reasons why a defendant would not want to testify. She further admitted she believed defendant was innocent until proven guilty.

We find no apparent mistakes in the record from defense counsel's voir dire. Defense counsel was engaged with potential jurors. He placed those issues which might present a bias against his client out before them. He exercised defendant's challenges for cause against another juror. Of the seven jurors at issue, all indicated they could be fair and impartial in defendant's case. Defense counsel was in a better position than this Court to evaluate the potential jurors for bias and we are not inclined to second-guess counsel having reviewed the record.

Affirmed.


/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien